F. B. WEBBER

*v.*

THE CITY OF CHICAGO.

*Filed at Ottawa January 16, 1894.*

1. RULE OF CONSTRUCTION—*statutes—general and particular words.* It is a general rule applicable to the construction of statutes, etc., that when an enumeration of specific things is followed by general words or phrases, the latter are held to refer to things of the same kind as those specified. But where, from the whole statute or instrument, a larger intent may be gathered, this rule will not be applied in such manner as to defeat such larger intent.

2. Where the general word follows particular and specific words of the same nature as itself, it takes its meaning from them, and is presumed to be restricted to the same *genus* as those words,—or, in other words, as comprehending only things of the same kind as those designated by them, unless, of course, there be something to show that a wider sense was intended. This rule is the same in respect to penal statutes.

3. MUNICIPAL CORPORATIONS—*licensing amusements, etc.—horse racing—the statute and an ordinance considered.* The forty-first subdivision of section 1 of article 5 of the general statute for the incorporation of cities and villages, vests in city councils the power to license, tax, regulate, suppress and prohibit "theatricals and other exhibitions, shows and amusements." Horse races exhibited within inclosures, and to which the public is admitted upon the payment of an admission fee, are shows and amusements within the meaning of this statute.

4. A city ordinance provided that "for the purpose of providing the licensing and taxing of theatricals, shows, amusements and all public exhibitions in a just and equitable manner, the same are hereby divided into four classes," the third of which embraced circuses, menageries, "or similar games for sport, and all other exhibitions, performances and entertainments not here enumerated, given  *  *  *  within any inclosure," and for which $10 was charged for each day: *Held*, that the ordinance was applicable to horse racing within an inclosure for which an admission fee was charged, though not specifically named.

5. ERROR—*questions not necessarily involved.* Where matters were presented on error which were not necessarily involved in the case as it was being considered, the court refused to consider such matters.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Criminal Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

Messrs. KNIGHT & BROWN, and Mr. LYMAN TRUMBULL, for the appellant.

Mr. ADOLPH KRAUS, and Mr. SIGMUND ZEISLER, for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

F. B. Webber was prosecuted and convicted before a justice of the peace for running a place of amusement at Garfield Park, in the city of Chicago, by selling tickets to horse-races, without first obtaining a license for the sale of the same, in violation of an ordinance of the city. On appeal to the Criminal Court of Cook county, a trial was had *de novo* before the court, a jury being waived, and at such trial, the defendant

was found guilty, and sentenced to pay a fine of $50 and costs. This judgment was affirmed by the Appellate Court on appeal, and the record is now brought to this court on appeal from the judgment of affirmance.

The evidence shows that, at the time of the commission of the offense charged in the complaint, the grounds of the Garfield Park Club, a corporation, were inclosed by a tight board fence about nine feet high, and extending from Madison street to Harrison street, a distance of about three-quarters of a mile, and were about one-quarter of a mile in width, and contained a one-mile race course. At that time, horse-racing was, and for a considerable time prior thereto had been, carried on within these grounds, the public being admitted thereto by tickets which were sold at a fixed price. Webber, at the time he was arrested, was in the employ of the club, and was engaged in selling tickets of admission to the grounds and racecourse, and receiving the price therefor. It was admitted at the trial, that neither he nor the club had at the time any license as required by the ordinance.

The ordinance of the city of Chicago providing for licensing and taxing amusements, etc., as amended December 12, 1881, provides, among other things, as follows:

"907. For the purpose of providing for the licensing and taxing of theatricals, shows, amusements and all public exhibitions for gain, in a just and equitable manner, the same are hereby divided into four classes, which shall be known as the first, second, third and fourth, as follows:

"1. All entertainments of a dramatic or operatic character, including lectures, public readings and recitations, and exhibitions of paintings or statuary, shall belong to and be known as entertainments of the first class.

"2. Concerts or other musical entertainments, panoramas, performances of any feats of jugglery, sleight of hand or necromancy, and exhibitions of any natural or artificial curiosi-

ties, shall belong to and be known as entertainments of the second class.·

"3. Circuses, menageries, caravans, side-shows and concerts, minstrel or musical entertainments, given under a covering of canvas, exhibitions of monsters or of freaks of nature, variety and minstrel shows, athletic ball, or similar games of sport, and all other exhibitions, performances and entertainments not here enumerated, given in a building, hall or under canvas or other cover, or within any inclosure, shall belong to and be known as entertainments of the third class.

"4. All street shows, exhibitions and devices, such as bird shows, galvanic batteries, lifting machines, blowing and striking machines, and all other exhibitions and performances or devices for the trial of strength, given, performed or had upon or along the streets or public grounds of the city of Chicago, and all exhibitions or shows not included in the three foregoing classes, shall belong to and be known as entertainments or exhibitions of the fourth class.

"908. No person or persons within the limits of the city shall give any of the entertainments mentioned in this chapter, for gain, without a license for that purpose first had and obtained from the mayor, under the seal of the city, under a penalty of not less than $50 and not exceeding $200 for each and every violation of this section: *Provided,* that for musical parties or concerts, and exhibitions of paintings or statuary, given by citizens of this city not engaged in the giving of such entertainments as a business, no license shall be required.

"909. Each license shall express for what it is granted and the time it is to continue, and the following tax or license fee shall be imposed upon each license granted as aforesaid, and paid to the city collector on the granting of such license, as follows, to-wit: First, for entertainments of the first class, $10 for every performance or exhibition; second, for entertainments of the second class, $10 for every performance or exhibition; third, for entertainments of the third class the

following sums: For each circus, or circus and menagerie, $75 for each day; for each menagerie, $50 for each day; for each side-show with any circus or menagerie, $10 for each and every day of exhibition; for each concert, musical or minstrel entertainment given under a covering of canvas, $10 for each day; fourth, for each variety and minstrel show, athletic ball, or similar games of sport, $10 for each day; and exhibitions of monsters or freaks of nature, and all other exhibitions, performances and entertainments not hereinbefore enumerated, given in a building, hall or under canvas or other covering, or within any inclosure, the sum of $20 for each week or parts thereof, but if such exhibition or show shall continue for a whole month or more, then at the rate of $50 per month; fifth, for the exhibition, show or device of the fourth class, or any entertainment or other exhibition not hereinbefore otherwise designated, $10 for each and every month or part thereof.

"911. The mayor shall determine, in every case where application for a license under this chapter is made, the class to which the entertainment belongs; and the person or persons to whom the license may be granted shall pay the license tax or fee herein fixed for such license."

It does not seem to be questioned that, if the foregoing provisions of the ordinance are valid, and can be held to apply to hores-races, the defendant was properly convicted. It follows that the construction and validity of the ordinance are the only matters presented for our consideration.

The first question then is, whether horse-races are among the amusements or public entertainments which the ordinance undertakes to license or tax. It of course must be admitted that they are not specifically named, and therefore, unless they can be held to come within the general description found in the third division or class, viz., "all other exhibitions, performances and entertainments given in any building, hall, or

under canvas or other cover, or within any inclosure," they can scarcely be held to come within the terms of the ordinance.

We may take judicial knowledge of the fact that horse-races, taking place in inclosed grounds, and which, as the evidence shows was the case here, 4000 to 5000, and sometimes as many as from 8000 to 10,000 people attended, paying an admission fee for the privilege of so doing, were "exhibitions, performances or entertainments," within the proper meaning of those terms. And such, we think, is the interpretation which must be given them, unless their meaning must be held to be restricted by the preceding words of the same paragraph, upon the principle *noscuntur a sociis.*

It is a general rule applicable to the construction of statutes, contracts and other instruments, that where an enumeration of specific things is followed by general words or phrases, the latter are held to refer to things of the same kind as those specified. *In re Swigert,* 119 Ill. 83 ; *Shirk* v. *The People,* 121 id. 61. But this is only one of many rules of construction, all of which are to be employed for the attainment of the same end, viz., that of ascertaining the intention of the Legislature or the contracting parties as expressed in the statute or contract sought to be construed. And where from the whole instrument a larger intent may be gathered, the rule under consideration will not be applied in such manner as to defeat such larger intent. Bishop on Contracts, sec. 409. "Where the general word follows particular and specific words of the same nature as itself, it takes its meaning from them, and is presumed to be restricted to the same *genus* as those words ; or, in other words, as comprehending only things of the same kind as those designated by them ; unless, of course, there be something to show that a wider sense was intended." Endlich on the Interpretation of Statutes, sec. 405.

The rule is no different where the statute to be construed is penal. Thus, in *Foster* v. *Blount,* 18 Ala. 687, it was held that the rule that where, in penal statutes, general words follow an

enumeration of words of a particular and specific meaning, such general words are to be held as applying only to persons or things of the same kind as those designated by the particular words, is but a rule of construction, to enable the court to ascertain the intention of the Legislature, and when that intention is apparent, can no more be allowed to govern in the exposition of penal, than any other statutes. See also *State* v. *Williams*, 2 Strobh. 474.

In this case, the general intention of the city council in passing the ordinance, is clearly manifested by the language of the first clause of section 907. It is there declared that the division of amusements, exhibitions, etc., into four classes is, "for the purpose of providing for the licensing and taxing of theatricals, shows, amusements, *and all public exhibitions for gain,* in a just and equitable manner." The intention of the ordinance, as thus declared, then is, to license and tax not only theatricals, shows and amusements, but all public exhibitions for gain. That horse-races, conducted as were those exhibited at the race-course of the Garfield Park Club, were public exhibitions for gain, is not and can not be successfully denied. It follows that the imposition upon such horse-races of a license fee or tax was clearly within the general intention of the ordinance.

Keeping this general intention in view, it is not difficult to interpret the language used in designating and determining what should belong to and be known as entertainments or exhibitions of the third class. To constitute that class, specific enumeration is made of circuses, menageries, caravans, side-shows and concerts, minstrel or musical entertainments given under a covering of canvas, exhibitions of monsters or of freaks of nature, variety and minstrel shows, athletic ball, or similar games of sport, to which is added, "and all *other* exhibitions, performances and entertainments *not here enumerated,* given in any building, hall, or under canvas or other cover or within any inclosure." That the operation of this

general and sweeping clause is not to be restricted by an application of the maxim *ejusdem generis* is, we think, very obvious. To apply that maxim would defeat the wider intent already expressed, and would do violence to the language of the clause itself. The words used, if given their natural and obvious import, apply, not to other exhibitions, performances and entertainments of the same *genus* with those previously specified, but to all other exhibitions, performances and entertainments not there enumerated, given within any inclosure, etc. And especially, when taken in connection with the wider intent already expressed, there can be no doubt that they were intended to embrace all exhibitions and performances coming within their general scope, whether belonging to the same *genus* as those specifically enumerated or not. Our conclusion then is, that the horse-races exhibited within the inclosure of the Garfield Park Club were included among the exhibitions, performances and entertainments which, by the terms of the ordinance, constituted the third class.

But it is contended, in the next place, that the ordinance itself is invalid. That the city council had power to provide by ordinance for licensing and taxing horse-races and other exhibitions and amusements, is, we think, scarcely open to question. The forty-first subdivision of section 1, of article 5, of the general statute for the incorporation of cities and villages vests in city councils power to license, tax, regulate, suppress and prohibit "theatricals and other exhibitions, shows and amusements." We entertain no doubt that horse-races exhibited within inclosures, and to which the public are admitted upon the payment of an admission fee, are shows and amusements within the meaning of this statute.

But it is urged that the ordinance is invalid by reason of ambiguity and uncertainty in its classification of the various amusements upon which it imposes a license fee, and because it delegates legislative power to the mayor by section 911, which authorizes him to determine in every case where appli-

cation for a license is made, the class to which the entertainment belongs, and the person or persons to whom the license may be granted. Upon this branch of the case, all we need say is, that it is wholly unnecessary for us to pass upon the objections to the ordinance thus raised. Even if there is uncertainty as to the class to which certain other amusements properly belong, there is none as to the class in which horse-races are included. And even if section 911 should be held to be invalid by reason of its making an improper delegation of legislative power to the mayor—a matter as to which we express no opinion—the validity of those provisions of the ordinance by which a license fee is imposed upon horse-races is in no degree impaired, as the class to which horse-races belong is clearly determined, and there is therefore no occasion for any action by the mayor by way of assigning them to their proper class, and the license fee to be charged is also fixed and ascertained by the ordinance itself.

In our opinion, none of the points raised by counsel for the defendant in support of their assignments of error are tenable, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*