### LATHAM *v.* STEWART, tax-collector, *et al.*

The provisions of the general tax act of 1909 (Civil Code, § 946) are not to be construed as imposing a business tax upon peddlers of chickens, eggs, and butter. It was error, therefore, for the judge to refuse to enjoin the collection of such a tax from the plaintiff, who was engaged in peddling such commodities.

JUNE 17, 1913.

Petition for injunction. Before Judge Bell. Fulton superior court. January 1, 1913.

E. M. Latham filed an equitable petition for injunction against A. P. Stewart as tax-collector of Fulton county, and Amos Baker as deputy, to enjoin them from collecting a peddler's license tax claimed to be due under the provisions of part 1, title 2, sec. 2, par. 27, of the general tax act (Acts of 1909, p. 46), as now embodied in the Civil Code, § 946. On the hearing there was evidence to the effect that the plaintiff had engaged, in Fulton county, during the year for which the tax was claimed, in peddling from his wagon chickens, eggs, and butter, without any license. The judge refused to grant an interlocutory injunction, and the plaintiff excepted.

*Gober & Jackson,* for plaintiff.

*Brantley, Jones & Brantley,* for defendants.

ATKINSON, J. The judge was authorized to find that the plaintiff, without a license so to do, in the county of Fulton, engaged in peddling chickens, eggs, and butter: and ·the only question is whether the peddling of such commodities renders the petitioner subject to the tax provided for in part 1, title 2, sec. 2, par. 27, of the general tax act of 1909, as now embodied in the Civil Code, § 946. After providing for a number of specific and occupation taxes, the act imposed such a tax of fifty dollars, in each county where the business was conducted, "Upon every peddler and traveling vendor of any patent or proprietary medicines, or remedies, or appliances of any kind, or of special nostrums, or jewelry, or stationery, or drugs, or soap, or of any other kind of merchandise or

commodity whatsoever (whether herein enumerated or not), peddling or selling any such goods, wares, medicines, nostrums, remedies, appliances, jewelry, stationery, soap, drugs, or other merchandise." If the peddling of chickens, eggs, and butter is comprehended by this section of the act, the plaintiff was subject to the tax, and the ruling of the court was proper; but if not so comprehended, the plaintiff would not be subject to the special tax, and the judgment of the court would be erroneous. It will be observed that the tax is upon dealers "of any patent or proprietary medicines, or remedies, or appliances of any kind, or of special nostrums, or jewelry, or stationery, or drugs, or soap, or of any other kind of merchandise or commodity whatsoever (whether herein enumerated or not)." Chickens, eggs, and butter clearly would not be included under any of the things specially mentioned; and the question is whether they are comprehended by the words "or of any other kind of merchandise or commodity whatsoever." These are general words, which are preceded by words specially designating particular classes of merchandise or commodities. Under the rule of ejusdem generis, the general words ordinarily should be construed as referring to merchandise or commodities of the same kind as those specially named. *Grier* v. *State,* 103 *Ga.* 428 (30 S. E. 255). Those which were specially named are of a different nature altogether from articles of food, in which class chickens, eggs, and butter would fall. It was evidently the legislative intent that the general words should apply only to merchandise or commodities which were of the same nature as those before specially named. The effect of so restricting the general words would be to leave the legislature free to tax the peddling of other merchandise or commodities of a different nature at a higher or lower amount, or not at all, accordingly as the nature of the commodity might in the legislative mind deserve to be treated. Sec. 2, par. 28 of the act is indicative of such intent; for there a higher business tax of two hundred dollars was imposed on peddlers and traveling vendors of stoves, ranges, and clocks, all of which were commodities or proper subject-matter of merchandise, but different in nature from patent or proprietary medicines, etc., the things specially named. If this interpretation be given to paragraph 27, that part of the act will harmonize with par. 28; but if it should not be given, and the general words should be held to include all merchandise or com--

modities of whatever nature, these provisions will be in irreconcilable conflict; for both would tax the peddling of stoves, ranges, etc., but in different amounts. · Again, par. 27 of the act (Civil Code, § 946), requires the payment of $50 in each county wherein a peddler may sell "any patent or proprietary . . appliances of any kind," while under par. 28 (3) of the act (Civil Code, § 947), every peddler is required to pay $25 in every county in which he may sell "any other patented article" than those enumerated in that section. Now, unless the rule of ejusdem generis be applied in construing the two sections, at least in determining which amount, $50 or $25, shall be paid by a peddler for selling a patented article in a county, when such article is not one specifically named in either of these sections of the code, how can the conflict in the two sections be reconciled? And if the application of such rule must be made to reconcile the conflict as to some portions of the sections, it seems fair and just to apply the rule generally to the construction of both sections in their entirety. Moreover, if the general words in section 946 should be construed to extend to every class of merchandise or commodity of whatever nature, it would lead to absurd results. It could hardly be contended that a tax of $50 upon boys peddling newspapers on the streets was in the legislative mind; yet newspapers are commodities, and the peddling of them would be taxed under such a construction. Examples of this character could be multiplied. Further, if the general words are to be so construed, the particular words which precede them would have been entirely useless, and no reason appears why the legislature should idly have employed them. The legislature might have taxed the peddling of articles of food had it been thought proper to do so; but there was no mention of them, or anything in the nature thereof, anywhere in the act. It seems evident that the peddling of them was not intended to be taxed. In view of this construction of the act, it was erroneous to refuse to enjoin the collection of the tax.

*Judgment reversed. All the Justices concur, except Lumpkin and Hill, JJ., dissenting.*

Evans, P. J., and Beck, J. We concur in the interpretation placed on the tax act by Mr. Justice Atkinson. A familiar canon of construction of statutes is that effect should be given to every word in the statute, if possible. If the legislature meant to impose

a tax upon a peddler of any commodity or every kind of merchandise, how easy would it have been to indicate such intent by just saying so. The enumeration of certain articles would be entirely meaningless unless they were intended to apply to a specific proposition, or were to be used as illustrative of the subjects the vending of which was intended to be taxed. The words, "or any other kind of merchandise," etc., are general, and are ancillary to the specific proposition, viz., to tax the vendor or peddler of a certain class of articles. Where you have general ancillary words, they should not be given such a construction as to do away with the specific proposition which they follow.

LUMPKIN and HILL, JJ., dissenting. Two cases were argued in this court, and are controlled by the opinions filed by the majority. In each case it appeared that the plaintiff in error was peddling on the streets of Atlanta. In the one case he was peddling chickens, eggs, butter, etc. In the other case he was peddling fruit. The only question is, whether peddlers of such merchandise or commodities fall within the terms of section 946 of the Civil Code, which reads as follows: "Upon every peddler and traveling vendor of any patent or proprietary medicines, or remedies, or appliances of any kind, or of special nostrums, or jewelry, or stationery, or drugs, or soap, or of any other kind of merchandise or commodity whatsoever (whether herein enumerated or not), peddling or selling any such goods, wares, medicines, nostrums, remedies, appliances, jewelry, stationery, soap, drugs, or other merchandise, fifty dollars in each county where the same or any of them are peddled, sold, or offered for sale." The majority of the court are of the opinion that, under the doctrine or rule of construction generally referred to as the doctrine of "ejusdem generis," the words, "or of any other kind of merchandise or commodity whatsoever (whether herein enumerated or not)," should be construed as limited to merchandise or commodities of a similar genus or kind to those specifically enumerated, and that, so construed, they do not include the merchandise or commodities which the plaintiffs in error were peddling. In this view we can not concur.

In Black on Interpretation of Laws, 141, the rule is thus stated: "It is a general rule of statutory construction that where general words follow an enumeration of persons or things, by words of a

particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. But this rule must be discarded where the legislative intention is plain to the contrary." On pp. 143 and 144 it is said: "But the rule of construction, that general and unlimited terms are restrained and limited by particular recitals, when used in connection with them, does not require a rejection of general terms entirely, and it is to be taken in connection with other rules of construction, not less important, such as that an act shall be so construed as to carry out the declared intention of the legislature. 'The doctrine of ejusdem generis is but a rule of construction to aid in ascertaining the meaning of the legislature, and does not warrant a court in confining the operation of the statute within narrower limits than was intended by the lawmakers. The general object of an act sometimes requires that the final general term shall not be restricted in meaning by its more specific predecessors.' . . It is further to be remarked that this principle or rule applies only where the specific words preceding the general expression are all of the same nature. Where they are of different genera, the meaning of the general word remains unaffected by its connection with them. Thus, where an act made it penal to convey to a prisoner, in order to facilitate his escape, 'any mask, dress, or disguise, or any letter, or any other article or thing,' it was held that the last general terms were to be understood in their primary and wide meaning, and as including any article or thing whatsoever which could in any manner facilitate the escape of a prisoner, such as a crowbar." In 2 Lewis' Sutherland Stat. Const. (2d ed.) § 437 (p. 832), it is said: "In cases coming within the reach of the principle of ejusdem generis, general words are read not according to their natural and usual sense, but are restricted to persons and things of the same kind or genus as those just enumerated; they are construed according to the more explicit context. This rule can be used only as an aid in ascertaining the legislative intent, and not for the purpose of controlling the intention or of confining the operation of the statute within narrower limits than was intended by the lawmaker. It affords a mere suggestion to the judicial mind that where it clearly appears that the lawmaker was thinking of a particular class of persons or objects, the words of

more general description may not have been intended to embrace any other than those within the class. The suggestion is one of common sense. Other rules of construction are equally potent, especially the primary rule which suggests that the intent of the legislature is to be found in the ordinary meaning of the words of the statute. . . So the restriction of general words to things ejusdem generis must not be carried to such an excess as to deprive them of all meaning." See also 26 Am. & Eng. Enc. Law (2d ed.), 609, 610; 36 Cyc. 1119, 1112.

Numerous citations could be made in support of the rules announced by these authorities. One illustrative case will suffice. In Webber v. Chicago, 148 Ill. 313 (36 N. E. 70), an ordinance provided for licensing "circuses, menageries, caravans, side-shows, and concerts, minstrels or musical entertainments, given under a covering of canvas, exhibitions of monsters or of freaks of nature, variety and minstrel shows, athletic ball, or similar games of sport, and all other exhibitions, performances and entertainments not here enumerated, given in a building, hall, or under canvas or other cover, or within any enclosure." It was held that this ordinance included horse-races within an enclosure. The court declared that the maxim of ejusdem generis was only one of many rules of construction to ascertain the intent of the legislature, and that "where, from the whole instrument, a larger intent may be gathered, the rule under consideration will not be applied to defeat such larger intent."

In the light of these rules of construction, let us see whether the general words in the statute under consideration should be given a restricted meaning, so as to include only merchandise and commodities of the same kind or genus as those specifically mentioned. The general tax act of 1902 imposed a specific tax "upon every traveling vendor of proprietary medicines, special nostrums, jewelry, paper, soap, or other merchandise, fifty dollars in each county where they may offer such articles for sale." In *Standard Oil Co.* v. *Swanson,* 121 *Ga.* 412 (49 S. E. 262), decided in December, 1904, it was held that, under the doctrine of ejusdem generis, the general words "or other merchandise" would be construed in connection with the words of specific enumeration, and that they did not embrace vendors of merchandise not ejusdem generis (that is, not of a like kind or genus) with the articles expressly enumerated

The general tax acts for some years employed the language above quoted, or similar language. In 1909 the legislature materially changed the form of words used in the general tax act in relation to these specific taxes. We must assume that the legislative branch of the government knew what language had been previously employed, and what construction this court had placed upon it. Knowing that this court had held that the addition of the general words "or other merchandise" to the specific enumeration preceding them would be considered as meaning other merchandise of like kind or genus, the legislature deliberately discarded that form of expression and used different language, apparently for the purpose of meeting the decision above cited and placing beyond controversy the fact that they did not mean to limit the concluding general words to merchandise or commodities of like kind with those which had been specifically mentioned. As codified in section 946 of the Civil Code, after enumerating proprietary medicines, or remedies, or appliances of any kind, or special nostrums, or jewelry, or stationery, or drugs, or soap, the act added, "any other kind of merchandise or commodity whatsoever (whether herein enumerated or not)." Bearing in mind that the doctrine of ejusdem generis is merely a rule of construction to the effect that ordinarily, in the absence of anything to indicate a contrary legislative intent, general words accompanying a specific enumeration will be construed to mean things of like kind as those enumerated, we are unable to see how it can be held that the general words "merchandise or commodity" shall be construed to mean merchandise or commodity of like kind as the articles specified, when the legislature has declared in express words that they do not mean of like kind only, but "*of any other kind whatsoever* (whether herein enumerated or not)." "Other kind," is not the same as like kind, and can not be properly construed to mean the same. The statute does not say any other merchandise or commodity, as it formerly did, but any other *kind*.

In the light of the history of this legislation, the previous construction placed upon the language by this court, and the change thereupon made by the legislature, to hold that the words "merchandise or commodity" shall be limited to merchandise or commodity of like kind only, in the face of the declaration of the legislature that it means any other kind of merchandise or commod-

ity whatsoever, would be in effect to hold that the legislature did not mean what they said in plain English words, and that it was impossible for them to escape from the interpretation which they knew that this court had placed upon the general words "or other merchandise." We of course recognize the rule that some effect is to be given to the fact that there is a specific enumeration; but if the general words "merchandise or commodity" are to be restricted to merchandise or commodities of like kind with those enumerated, what effect is to be given to the words *"or of any other kind whatsoever* (whether herein enumerated or not)"? Such a construction would give to the act exactly the same meaning as if the words last quoted were entirely stricken from the statute. It is one of the fundamental rules of statutory construction that the court should presume that the legislature intended for all the words of the statute to have some meaning.

In the case of *Standard Oil Co.* v. *Swanson,* supra, no reference was made to the question whether the enumerated articles were themselves of like kind or genus, and it may be well doubted whether it can be declared that patent medicines and stationery are of the same genus, or that jewelry and drugs belong to the same family of merchandise. If the enumeration itself includes different genera, as stated in the text-books above cited, the doctrine of ejusdem generis has little or no application as to the words under discussion.

We recognize the fact that sections 946 and 947 of the Civil Code may seem in some respects to overlap each other. Thus, in section 946, among the enumerated articles are "any patent or proprietary medicines or remedies, or appliances of any kind," and in section 947, after enumerating certain patented articles, occur the words "or any other patented article." But this involves another rule of construction, that the legislature is not to be deemed as having conflicted with itself in the same act, and that a construction will be placed upon two parts of an act so as to harmonize them, if practicable. Where general words are used in one part of an act in reference to requiring a specific tax, and in another part of the same act certain classes of things are made subject to a different tax, they will be considered as taken from under the previous general enumeration. This is illustrated by two different parts of section 947. In the first part are general words in regard to peddling

certain classes of articles. In the latter part a different tax is placed upon traveling vendors using boats. We assume that the court would construe the two parts of the section so as to harmonize them and give to each its proper sphere of operation. But we are unable to see that this rule of harmonizing different parts of an act can be carried to the extent of saying that when the legislature declares in terms that it intends to place a specific tax upon peddlers of certain merchandise and commodities, and upon peddlers of any other kind of merchandise or commodities whatsoever (whether herein enumerated or not), a construction should be put upon the act so as to exclude a large class of peddlers from being subject to any tax at all under any part of the act. See, in this connection, *Cece* v. *Stewart,* 139 *Ga.* 102 (76 S. E. 864), where the same statute was under construction.

With the question of the expediency of the legislation this court has nothing to do. That is for the legislature. The only question is, what did that body enact? Moreover, the illustration from newsboys does not seem to us very convincing, as newsboys have never been classified as peddlers or traveling vendors under any law, so far as we are aware.