## HURT, Criminal Dist. Atty., v. OAK DOWNS, Inc., et al.

### No. 12074.

Court of Civil Appeals of Texas. Dallas.
June 29, 1935.

Rehearing Denied July 13, 1935.

Robert L. Hurt, Crim. Dist. Atty., and W. F. Clark, Ass't Crim. Dist. Atty., both of Dallas, for appellant.

Currie McCutcheon, of Dallas, and J. Franklin Spears, of San Antonio, for appellees.

LOONEY, Justice.

The plaintiffs are Oak Downs, Inc., a domestic corporation, and Winfield Morten, Jack Herman, and F. G. Cameron, incorporators, stockholders, directors, and officers of the corporation; the defendant is Honorable Robert L. Hurt, criminal district attorney of Dallas county, Tex.

In the suit plaintiffs sought and obtained, ex parte and without notice to defendant, a temporary injunction restraining him "from in any manner interfering with the operation of dog races beginning June 18, 1935, excluding Sundays, to run for 40 days, to be held on a tract of land lying West of Love Field, as more fully described in deed recorded in Vol. 1497 page 315, Deed Records of Dallas County, Texas, from interfering with the business, meet, exhibition and the betting by the pari mutuel or certificate system and from filing against these plaintiffs, their agents, servants or employes or those associated with them in the said project or business or exhibition or meet, provided that this injunction shall not prevent any investigation by the Dallas County Grand Jury of any violations of law that may occur during said race said meet, and said District Attorney may present evidence before said Grand Jury and prosecute any and all cases in which indictments may be returned, until further order of the District Court * * *" from which the district attorney prosecuted this appeal.

After excluding immaterial matters and all mere conclusions and arguments of the pleader, we are of opinion that plaintiffs show that they will suffer a serious property damage, if the district attorney carries out his purpose to prosecute them criminally and pursue them under civil statutes, for keeping certain premises for the purpose of being used as a place to bet or wager on dog races conducted under the pari-mutuel system.

As a general rule, prosecutions for the violation of penal statutes will not be enjoined, but it seems that this rule is subordinate to the principle that where there is an attempt made to enforce a constitutionally void law, or to prosecute in the absence of any law authorizing same, and property rights demanding protection are involved, such prosecution or threatened prosecution is enjoinable. See 24 Tex. Jur. p. 66, § 46, and authorities cited.

That betting on dog races, under the scheme called pari-mutuel, as planned and proposed by plaintiffs, is gambling (see 27 C. J 976), is not controverted, hence it follows that, if betting or wagering on dog races is prohibited and penalized by statute, it was the plain duty of the district attorney to enforce the same, hence he should not have been enjoined.

Thus we are brought to the question: Is betting or wagering on dog races prohibited by art. 624 P. C.? If so, the keeping of premises where people resort for such purpose is made an offense by article 625 of the Penal Code. These statutes read as follows: "Art. 624. If any person shall bet or wager at any gaming table or bank or shall bet or wager any money or other thing of value at any of the following games, viz.: muggins, crackloo, crack-or-loo, or the game of matching money or coins of any denomination for such coins or for any other thing of value, or at any table or bank, by whatsoever name the same may be known, or whether named or not, and without reference as to how the same may be played, constructed or operated, or shall bet or wager upon anything in any place where people resort for the purpose of betting or wagering, he shall be fined not exceeding fifty dollars. When it is alleged and proven that the betting was on any gaming table or bank, the court or jury may, in addition to said fine, impose a jail penalty of not less than ten nor more than thirty days.

"Art. 625. If any person shall keep, or be in any manner interested in keeping any premises, building, room or place for the purpose of being used as a place to bet or wager, or to gamble with cards, dice or dominoes, or to keep or to exhibit for the purpose of gaming, any bank, table, alley, machine, wheel or device whatsoever, or as a place where people resort to gamble, bet or wager upon anything whatever, he shall be confined in the penitentiary not

less than two nor more than four years, regardless of whether any of the above mentioned games, tables, banks, alleys, machines, wheels or devices, or things are licensed by law or not. Any place or device shall be considered as used for gaming or to gamble with or for betting or wagering, if any money or anything of value is bet thereon, or if the same is resorted to for the purpose of gaming or betting."

While it is the peculiar province of the Court of Criminal Appeals to construe penal statutes, we have been furnished with no decision of that court construing the statutes in the respects in which they are now being considered. It is obvious that dog racing is not specifically mentioned in the statute; therefore, if such betting or wagering, or the keeping of premises where people resort for such purpose, are prohibited, such meaning must be found in the words of general import, following specific designations, as follows: "If any person shall bet or wager * * * upon anything in any place where people resort for the purpose of betting or wagering, he shall be fined not exceeding fifty dollars." Plaintiffs insist that the doctrine of ejusdem generis is applicable as a rule of construction, and that the general language quoted should be construed as including and prohibiting only betting or wagering on games, tables, and banks, of a like kind and nature to those specifically mentioned in the statutes. In support of this contention, plaintiffs cite the recent decision of the San Antonio court, in All Texas Racing Ass'n v. State (Tex. Civ. App.) 82 S.W.(2d) 151, 153. This decision supports the contention of plaintiff, as it holds that the keeping of premises as a place for dog races and for betting on results thereof under the pari-mutuel system is not an offense. Entertaining as we do the greatest respect for the uniformly able opinions of members of the San Antonio Court, yet we can neither accept as sound the reasoning, nor the correctness of the result reached, in the case just referred to. In reaching its conclusion, the court implies, from certain acts of the Legislature, a legislative interpretation of the statutes under consideration. It says: "But it is clear that the Legislature did not consider that article [625 P. C., formerly Art. 388b, chap. 49, Acts 1907], or any part of it sufficiently broad to cover betting on horse races, for the Legislature in 1909 (chapter 45) specifically made it an offense to bet on horse races. And, if betting on horse races was not prohibited by that article, betting on dog races, a similar sport, was not so prohibited." Pursuing this line of argument, the court also said that: "A recent legislative construction of the present article 625 is still more forceful. Article 655a, Acts 1933, First Called Session, chapter 10, p. 32 (Vernon's Ann. P. C. art. 655a), legalized betting under the pari mutuel system upon the results of horse races. ·That act specifically provided that: 'The said certificate system as herein authorized shall not be construed to be either pool selling, betting or bookmaking within the meaning of Articles 645, 647 and 648 of the Penal Code of the State of Texas, Title 2, Chapter 6, according to the 1925 revision.' But there is no reference whatever to article 625. The Legislature, in legalizing betting in this manner on horse races, evidently did not consider that betting on horse races was prohibited by the terms of article 625."

In our opinion, the implication of a legislative construction, as mentioned, is unwarranted. The court assumed that, in 1909, the Legislature, realizing that the statute under consideration did not prohibit betting or horse racing, enacted chapter 45, specifically dealing with that subject. There was no occasion for the Legislature to consider whether or not article 388b of chapter 49 of Acts of 1907 prohibited betting on horse races, as such offense, as well as the buying and selling of pools, and the receiving and making of bets on horse races, and the keeping of premises for such purposes, were at that time prohibited by a separate and specific law, and had been since 1903. The first act on the subject was approved March 23, 1903 (see chapter 50, pp. 68, 69, Session Acts); this was amended by an act approved May 2, 1905, being chapter 165, pp. 398, 399, Session Acts, and in lieu of these enactments, the Legislature adopted the act approved March 11, 1909, being chapter 45, mentioned by Chief Justice Bickett. In view of this status of the law, we fail to see that either the act of 1909 or the Horse Racing Act of October 12, 1933 (Acts 1933, 1st Called Sess. c. 10, p. 32 [see Vernon's Ann. Civ. St. art. 655a] furnishes any evidence of a legislative construction of the Gaming Act approved March 28, 1907 (chapter 49), including, as originally enacted the statutes (articles 624 and 625),

under consideration. In enacting chapter 49 in 1907, including the provisions brought forward in articles 624 and 625, P. C., and in enacting chapter 45 in 1909, amending the statutes with reference to horse racing, pool selling, etc., the Legislature is presumed to have acted with full knowledge of existing statutes, hence all statutes in pari materia, general and special, are to be construed in harmony with each other, as forming parts of a general uniform system, otherwise the statutes would be disjointed, inharmonious, conflicting, and confusing. 59 C. J. 1038 § 618.

The San Antonio Court also invoked the familiar rule of ejusdem generis, saying: "Moreover, considering the terms of article 625 in the light of the familiar rule of construction, the rule of ejusdem generis (that words of general description following words of particular description are to be taken as meaning only things of the same kind as those referred to in the words of particular description), it is clear that the article does not prohibit betting on dog races. The particular subjects of bets condemned were cards, dice, or dominoes, tables, banks, alleys, machines, wheels, or devices. The additional words, 'or as a place where people resort to gamble, bet or wager upon anything whatever,' have no greater scope of meaning than subjects of like kind and character to those particularly mentioned. The general expressions contained in the article do not make it an offense to bet on dog races."

■ The following from 59 C. J. 981–984, we believe, is a comprehensive and accurate statement of the rule mentioned; we quote: "By the rule of construction known as 'ejusdem generis', where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated, and this rule has been held especially applicable to penal statutes. The particular words are presumed to describe certain species and the general words to be used for the purpose of including other species of the same genus. The rule is based on the obvious reason that, if the legislature had intended the general words to be used in their unrestricted sense they would have made no mention of the particular classes. The words 'other' or 'any other' following an enumeration of particular classes are therefore to be read as 'other such like', and to include only others of like kind or character. The doctrine of ejusdem generis, however, is only a rule of construction, to be applied as an aid in ascertaining the legislative intent, and cannot control where the plain purpose and intent of the legislature would thereby be hindered or defeated; nor does the doctrine apply where the specific words of a statute signify subjects greatly different from one another, nor where the specific words embrace all objects of their class, so that the general words must bear a different meaning from the specific words or be meaningless, nor where there are no specific terms followed by general terms. The general expression is not to be considered as limited only to the last of the enumeration but applies to all." To the same effect see Ex parte Roquemore, 60 Tex. Cr. R. 282, 131 S. W. 1101, 32 L. R. A. (N. S.) 1186; Board of Prison Com'rs v. Binford (Tex. Civ. App.) 259 S. W. 169, 174.

■■ Thus, we see that the rule under consideration has no application whatever, where the specific words of a statute signify subjects or things differing greatly one from another. Applying this limitation of the rule to the statute under consideration (article 624, P. C.), we find that it is made unlawful to bet or wager at any gambling table or bank. There are various table games differently named and played, the result of which being dependent alone upon skill of the player; a banking game by whatever name known, is one of chance, where a fund is offered or staked on bets; the game of "muggins" mentioned, is played with both cards and dominoes; crack-loo, or crack-or-loo, depends alone upon skill, is played by tossing up a coin and the one whose coin rests nearest a crack in the floor is the winner; the game of matching coins, is a well-known game, the result of which depends alone on luck. The specific enumeration (in article 624) is followed by this general language, " * * * or shall bet or wager upon anything in any place where people resort for the purpose of betting or wagering, he shall be fined," etc.

It is obvious, we think, that the games upon which betting and wagering is prohibited by this statute are so dissimilar in the instrument or device used, and in the method of conducting the game—in some the result being dependent upon pure luck or chance, while in others the result

is dependent upon skill—that it cannot be reasonably said that the games and things specifically mentioned are species of a common genus. So, we conclude that the rule of construction under consideration has no application, and that the general language of the statute following the specific enumeration of games must be held to include something of a different genus, from the games specifically mentioned, or else words of general import must be rejected as altogether meaningless.

■ But, are we justified in rejecting the general language of articles 624 and 625 as meaningless? We do not think so. The general rule announced in 59 C. J. p. 995, § 595, is that: "Provided always that the interpretation is reasonable and not in conflict with the legislative intent, it is a cardinal rule of construction of statutes that effect must be given, if possible, to the whole statute and every part thereof. To this end it is the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. Just as an interpretation which gives effect to the statute will be chosen instead of one which defeats it, so an interpretation which gives effect to the entire language will be selected as against one which does not."

■ If, therefore, the language of general import in articles 624 and 625 P. C., cannot be ignored, as meaningless, what does it mean? "In seeking to ascertain the legislative intent where the language of a statute is ambiguous, the courts will take into consideration all the facts and circumstances existing at the time of, and leading up to its enactment, such as the history of the times, the habits and activities of the people, the state of the existing law, and the evils to be remedied by the new act * * *." 59 C. J. pp. 1014, 1016. If we are permitted to consider the facts and circumstances and the history of the times that led to the enactment in 1907 of chapter 49 on the subject of gambling, what were the facts, and what is that history? The journals of the Thirtieth Legislature reveal that House Bill No. 84, on the subject of gaming, had passed the House, also the Senate, with certain amendments, and was pending in the House subject to call at the time the Legislature adjourned over a week-end, so that its members could attend some attraction in the city of Fort Worth. During this week-end, Honorable Jeff McLean, county attor-

ney of Tarrant county, was assassinated by a gambler, ruthlessly shot down on the streets of that city, out of revenge, because of McLean's activities, as a public official, in enforcing the Penal Code of the state against public gambling. This conspicuous tragedy shocked not only members of the Legislature present in the city, but the entire state, awakening a public conscience, and a grim purpose to stamp out gambling in its every possible form. On assembling the following week, House Bill No. 84 was placed, by appropriate resolutions of both the House and Senate, in the hands of a free-conference committee; this committee wrote into the bill new intents and purposes, phrased not in weazen words, but in meaningful vigorous terms; the committee bill passed both Houses under suspension of the rules and became immediately effective, constituting the answer of an outraged public to the murderous desperadoism of a vengeful representative of the gambling fraternity. So, we conclude that the general language of these two articles of the Penal Code include within its scope and meaning the intent and purpose to prohibit and the prohibition of all wagering and betting, on any and every device and thing, not elsewhere, and in other statutes specially prohibited, including the prohibition against wagering and betting on dog races, and the keeping of premises, where people resort to gamble and wager on the result of such race.

■ It is insisted, however, that even if it should be held that the general language of these statutes contain prohibitions against betting or wagering on dog races, or the keeping of premises where people assemble for such purpose, that in this respect they are ineffective, in that these offenses are not clearly defined, as required by article 1, ch. 1, of Penal Code. We fail to grasp the force of this contention. The requirement that every offense against the laws of this state shall be defined in plain language means that an act made a penal offense shall be defined with such certainty as that one may know, in advance, that the same is prohibited and penalized. Griffin v. State, 86 Tex. Cr. R. 498, 218 S. W. 494, 495; Russell v. State, 88 Tex. Cr. R. 512, 228 S. W. 566, 567; Tozer v. United States (C. C.) 52 F. 917, 919. Do the statutes under consideration meet this requirement? We think so. These offenses are as well defined as others of the same

statute, admittedly well defined. It must be borne in mind that the evil sought to be suppressed is gambling, and the maintenance of premises for such purpose; the particular game, event, or thing wagered or bet upon is relatively immaterial, in fact, in a majority of instances, is without evil and constitutes a pleasing and enjoyable entertainment. Offenses admittedly well defined in the statute are betting and wagering on games played with cards, dominoes, dice, tables, banks, etc.

It is a matter of common knowledge that there are many and differently named and played games by each of these means. Again, under the rule of ejusdem generis, betting or wagering on a game or thing not specifically named, but within the meaning of words of general import that follow specific designations, is considered a sufficiently well-defined offense within the meaning of the statutes. So, we conclude that the statute in question, in plain unmistakable language, informs all persons in advance that in addition to the gaming offenses elsewhere specifically mentioned, that any betting or wagering upon anything in any place where people assemble for such purpose, and the keeping of premises for such purpose, are prohibited and penalized.

 For the reasons stated we believe the court below erred in granting the temporary injunction; therefore, its order is set aside and the injunction is dissolved.

Reversed and rendered.

BOND, Justice (dissenting).

Until the Legislature has enacted a statute prohibiting betting or wagering on dog races, I content myself with the laws as written, conceiving it to be the duty of the judiciary to decide on rights, regulated or controlled, according to the laws of the land, and not on belief of what ought to be the law. The judiciary should not legislate, but only determine the law as enacted by the legislative branch of the government, and not exalt its belief or notion above the law, and follow such as a higher Code.

The appellees in this case are shown to have valuable property rights, which they are not allowed to enjoy because of the acts and threatened acts of the appellant. Their investment of more than $50,000 is threatened to be destroyed by an agency of the state, in not allowing them to operate their property. These rights are vested property rights, and should not be denied to them, if there be no law offensive.

If the appellees, in operating their business, violated the Penal Code of this state, the appellant and other officers of the state of Texas have a right, and it becomes their duty in the name of the state, to file charges and complaints in the criminal courts of this state and subject them to legal punishment without molestation or interference by injunctive writs; but, on the other hand, if betting on dog races is not prohibited by the Penal Code, then the state of Texas, through its constituted authorities, should respect the rights of its citizens, regardless of the personal views of such officers.

The San Antonio Court of Civil Appeals, in the case of All Texas Racing Ass'n v. State, by Shook, Crim. Dist. Atty., 82 S.W.(2d) 151, on facts similar to the one at bar, held that the keeping of a place for dog races and for betting on the results thereof, under pari-mutuel system, was not an offense under Texas law. The appellant, being an officer of the state, in my opinion, is bound by that decision, until it is overruled or reversed by the Supreme Court of this state, and it became his duty to uphold the sanctity of the law, as there pronounced, regardless of his personal views. The decision was also binding upon the district judge of Dallas county, who granted the temporary injunction in this case, and upon all officers and agents of the state of Texas in all proceedings involving the issuance of temporary writs of injunction effective prior to a hearing in the Supreme Court. No district court has a right to decide cases and adjudicate property rights of litigants contrary to the decision of an appellate court deciding the same question. In my opinion, trial courts must follow and be bound by a ruling of law made by a Court of Appeals, until such ruling is overruled or set aside by the Supreme Court, or until conflicted with by another Court of Appeals, and the decision is entitled to the respect of all inferior courts of this state. Thus, it was not within the province of the district court to determine the correctness of the decision of the Court of Civil Appeals at San Antonio; it was its duty to respect that decision, and, in obedience to the mandate and respect of a higher authority, the learned trial judge in this case, following that rule, granted the temporary injunction, thereby holding the matter in statu quo, pending a

final determination of the issue in the Supreme Court of Texas; his action should be affirmed.

Furthermore, in my opinion, the decision of the San Antonio Court, supra, is an excellent reasoned opinion, and correctly decides the law of this case. Dog races and pari-mutuel betting thereon does not violate the penal laws of this state, and no officer of this state, in the discharge of his duty of enforcing the penal laws of this state, has a right to interfere therewith.

It must be borne in mind that only those acts are criminal when clearly made so by the statutes of the state. The Penal Code expressly makes it an offense to bet or wager at any game of cards, dice, or dominoes; at any gaming table or bank; at any game of muggins, crack-loo, crack-or-loo, or the game of matching money or coins or "upon anything in any place where people resort for the purpose of betting or wagering"; upon the result of an election; at any game of baseball or football, and, prior to the act of 1933 (see Vernon's Ann. Civ. St. Art. 655a), on any horse race (Penal Code, article 615, et seq.). Betting or wagering is not illegal, merely as betting or wagering. It is the betting or wagering at the games, tables, and banks, expressly enumerated in the statute, which constitutes the offense denounced. This has always been the rule and is the law in Texas. The Supreme Court, as early as McElroy v. Carmichael, 6 Tex. 454, and again in Houghton v. State, 41 Tex. 136, and in all cases since that time, announces this as a rule, and has been universally followed from that day to this. Horse racing and dog racing are not games [Panas v. Texas Breeders & Racing Ass'n (Tex. Civ. App.) 80 S.W. (2d) 1020], and certainly are not tables or banks.

Articles 624 and 625 of the Penal Code, which are the acts of the Code involved here, were passed in 1907, prohibiting the betting and wagering or keeping a place where people resort to gamble, bet, or wager on specific games and devices; and, following the class of games and devices, the act prohibits in general words betting or wagering "upon anything in any place where people resort for the purpose of betting or wagering." In construing statutes of this nature, the Supreme Court of this state has adopted the universal doctrine of ejusdem generis, and that, where general words follow an enumeration of persons or things, such general words are not to be considered in their widest extent, but are to be held as applying only to persons or things of the same kind or class as those specifically mentioned.

In the case of Bailey v. Texas Indemnity Insurance Co., 14 S.W.(2d) 798, 802, the Commission of Appeals, speaking through Judge Short, adopted and approved the following language from the Supreme Court's decision, in Farmers' & Mechanics' Nat. Bank v. Hanks et al., 104 Tex. 320, 137 S. W. 1120, Ann. Cas. 1914B, 368, as follows: "When there are general words following particular and specific words, the former must be confined to things of the same kind." In the Farmers' & Mechanics' Nat. Bank v. Hanks, supra, the Supreme Court cites, with approval, the case of Ex parte Muckenfuss, 52 Tex. Cr. R. 467, 107 S. W. 1131, 1132, by the Court of Criminal Appeals, in which Judge Ramsey held: "It is a familiar rule that, where general words follow particular and specific words, the former must be confined to things of the same kind. It has been held, also, that this rule is especially applicable in the interpretation of statutes defining crimes and regulating their punishment. See McDade v. People, 29 Mich. 50, citing American Transportation Co. v. Moore, 5 Mich. 368; Hawkins v. Great Western R. Co., 17 Mich. 57, 97 Am. Dec. 179; In re Ticknor's Estate, 13 Mich. 44; Phillips v. Poland, L. R. 1 C. P. 204; Hall v. State, 20 Ohio, 7; Daggett v. State, 4 Conn. 60, 10 Am. Dec. 100; Chegaray v. Mayor, etc., 13 N. Y. 220; 1 Bish. Cr. Law, § 149; Dwarris, 621.

"The doctrine itself is thus well expressed in Lewis' Sutherland Statutory Construction: 'When there are general words following particular and specific words, the former must be confined to things of the same kind. This is known as the rule or doctrine of "ejusdem generis." Some judicial statements of this doctrine are here given: "When general words follow an enumeration of particular things, such words must be held to include only such matters or objects as are of the same kind as those specifically enumerated." "The rule is that, where words of a particular description in a statute are followed by general words that are not so specific and limited, unless there be a clear manifestation of a contrary purpose, the general words are to be construed as applicable to persons or things or cases of like kind to those desig-

nated by the particular words." "It is a principle of statutory construction, everywhere recognized and acted upon, not only with respect to penal statutes, but to those affecting only civil rights and duties, that where words particularly designating specific acts or things are followed by and associated with words of general import, comprehensively designating acts or things, the latter are generally to be regarded as comprehending only matters of the same kind or class as those particularly stated. They are to be deemed to have been used, not in the broad sense which they might bear if standing alone, but as related to the words of more definite and particular meaning with which they are associated." The rule is supported by numerous cases.' Hurd v. McClellan, 14 Colo. 213, 23 P. 792; Washington Electric Vehicle Transportation Co. v. District of Columbia, 19 App. D. C. 462; Balkcom v. Empire Lumber Co., 91 Ga. 651, 17 S. E. 1020, 44 Am. St. Rep. 58; Grier v. State, 103 Ga. 428, 30 S. E. 255; Davis v. Dougherty County, 116 Ga. 491, 42 S. E. 764; Misch v. Russell, 136 Ill. 22, 26 N. E. 528, 12 L. R. A. [125] 25; Ambler v. Whipple, 139 Ill. 311, 28 N. E. 841, 32 Am. St. Rep. 202; Webber v. Chicago, 148 Ill. 313, 36 N. E. 70; Cecil v. Green, 161 Ill. 265, 43 N. E. 1105, 32 L. R. A. 566; Elgin Hydraulic Co. v. Elgin, 194 Ill. 476, 62 N. E. 929; Chicago Union Traction Co. v. Chicago, 199 Ill. 484, 65 N. E. 451, 59 L. R. A. 631; Marquis v. Chicago, 27 Ill. App. 251; City of Cairo v. Coleman, 53 Ill. App. 680; McKeon v. Wolf, 77 Ill. App. 325; Philips v. Christian County, 87 Ill. App. 481; Town of Stites v. Wiggins Ferry Co., 97 Ill. App. 157; Roberts v. Detroit, 102 Mich, 64, 60 N. W. 450, 27 L. R. A. 572; Rhone v. Loomis, 74 Minn. 200, 77 N. W. 31; State v. Barge, 82 Minn. 256, 84 N. W. 911, 53 L. R. A. 428; Leinkauf v. Barnes, 66 Miss. 207, 5 So. 402; State ex rel. Cannon v. May, 106 Mo. 488, 17 S. W. 660; Greenville Ice & Coal Co. v. Greenville, 69 Miss. 86, 10 So. 574; State v. Dinnisse, 109 Mo. 434, 19 S. W. 92; State v. Schuchmann, 133 Mo. 111, 33 S. W. 35, 34 S. W. 842; State v. South, 136 Mo. 673, 38 S. W. 716; Ruckert v. Grand Ave. Ry. Co., 163 Mo. 260, 63 S. W. 814; Bachman v. Brown, 57 Mo. App. 68; McCutcheon v. Pacific R. Co., 72 Mo. App. 271; State v. Ennis, 79 Mo. App. 12; Kime v. Crider, 6 Pa. Dist. R. 688; In re Barre Water Co., 62 Vt. 27, 20 A. 109, 9 L. R. A. 195; American Manganese Co. v. Virginia Manganese Co., 91 Va. 272, 21 S. E. 466; People v. Dolan,

5 Wyo. 245, 39 P. 752; Baker v. Crook County Com'rs, 9 Wyo. 51, 59 P. 797; United States v. Wilson (D. C.) 58 F. 768; Bruen v. People, 206 Ill. 417, 69 N. E. 24; Lassen v. Karrer, 117 Mich. 512, 76 N. W. 73; State v. Krueger, 134 Mo. 262, 35 S. W. 604; Edgecomb v. His Creditors, 19 Nev. 149, 7 P. 533.

"This precise rule has received indorsement in our own courts. Murray v. State, 21 Tex. App. 620, 2 S. W. 757, 57 Am. Rep. 623. In that case, Judge White says: 'The leading and controlling rule in the construction of statutes—in fact, the primary and fundamental one—is to interpret them according to their true meaning and intent. To ascertain this intent it is the duty of the court to find, by other established rules, what was the fair, natural, and probable intent of the Legislature."

In a very recent case, Thomas v. State —— S.W.(2d) ——,[1] decided only yesterday, not yet reported [in State report], the defendant was convicted for keeping a place to bet, wager and gamble on horse races, the Court of Criminal Appeals, in construing article 625, P. C., applied the doctrine of ejusdem generis, using this language, viz.: "If appellant under the facts in this case, could be prosecuted and convicted under Article 625, supra, then any person who provided a building, room or place, where people might resort to bet or wager, on football, baseball or the result of an election, could also be prosecuted under said article, although horse racing, football, baseball or betting on an election is not mentioned or referred to therein. If the Legislature had intended to include an offense of betting on horse races, bookmaking or pool selling in the general statute, article 625, supra, it could have said so, and obviated the enactment of special statutes on the subject. * * * Inasmuch as article 625, supra, specifically mentions the games and things which are therein prohibited, it occurs to us that the Legislature did not intend to include therein betting on horse races, football and baseball games, bookmaking or pool selling. * * * The words, 'or as a place where people resort to gamble, bet or wager upon anything whatsoever' is but a cleaning up phrase, in the construction of which the rule of ejusdem generis must be resorted to, and when we apply that rule, we find that it refers to and means acts of like or similar nature as those specifically mentioned in said article. It does not seem reasonable that

---

[1] Rehearing pending at date of publication.

anyone will seriously contend that horse racing, bookmaking or pool selling are similar in nature as gaming on cards, dice or dominoes."

The cited cases illustrate the doctrine that has received the express sanction and approval of the Supreme Court of this state. Applying the rule to the case-at bar and considering and comparing the general nature of the portion of the Penal Code, the conclusion is inescapable that betting on horse races or on dog races, or keeping a place for that purpose, does not come under the category of the games played with cards, dice, and dominoes; muggins, crack-loo, crack-or-loo and matching money or coins; table, bank, and banks, which are enumerated in the statute, and on which betting is specifically prohibited.

Lending aid to this interpretation of the articles, the intent and construction placed on them by the Legislature itself may be reviewed; and, in my opinion, the Legislature has applied the doctrine of ejusdem generis to this act by the passage of further legislation, prohibiting betting and wagering on things clearly not of the same enumerated class. Illustrating this conclusion, the Legislature, at the same session, only a few days after the passage of this act, passed the act (Pen. Code 1925, art. 646) prohibiting the betting and wagering on football and baseball. Evidently, the Legislature did not consider that these games belong to the same class as enumerated in the considered articles, and, certainly, they do not. Subsequent to 1907 and prior to 1909, horse racing and dog racing evidently occupied identical positions before the law. In 1909, the Legislature thought it was necessary to pass a special statute prohibiting the betting on horse races (Pen. Code 1925, art. 648), then, certainly, it was also necessary to pass a special statute prohibiting betting on dog races. Again, in 1933, the Legislature, by amendment (Vernon's Ann. Civ. St. art. 655a), legalized pari-mutuel horse race betting. In this amendment, the Legislature expressly mentioned the articles of the Penal Code intended to be superseded by such amendment, and which articles the Legislature considered as making betting on horse races a crime. The amendment refers expressly to articles 645–647 and 648 of the Penal Code. There is no reference to articles 624 and 625, or effort to amend or supersede these articles. If these articles impaired horse racing and made betting on such an offense, then certainly the Legisla-

ture would have mentioned these articles along with the other articles which had theretofore made betting on horse racing an offense. So, the conclusion is inescapable, in my opinion, that the Legislature did not consider that articles 624 and 625 prohibited betting on dog racing. If betting on horse racing was not prohibited by these articles and the special statute of 1909 (article 648) had to be passed, to make it an offense, then, manifestly, articles 624 and 625 do not make betting on dog races an offense.

In the opinion of All Texas Racing Ass'n v. State, supra, Judge Bickett very aptly expressed the law applicable to this case, and concluded that "It is not an offense under the laws of this state to keep a place where dog races are run and betting upon the results of such races is done under the pari-mutuel system." So, there being no law against it, the state of Texas, through its officers, has no right to interfere with appellees' rights; but, it is of paramount importance that officers predicate their action on the fundamental premise, which has served as the corner stone of the edifice on which the strength of this government has been tested since its inception, to exhaust the resources of the state in defense of the rights of its humblest citizen. In my opinion, the judgment of the lower court should be affirmed, and, so believing, register my dissent.