**ALL TEXAS RACING ASS'N et al. v. STATE,
by SHOOK, Crim. Dist. Atty.**

**No. 9733.**

Court of Civil Appeals of Texas.
San Antonio.
April 10, 1935.

Rehearing Denied May 1, 1935.

Conger, Low & Spears, of San Antonio, for appellants.

John R. Shook and W. C. Linden, both of San Antonio, for appellee.

BICKETT, Chief Justice.

This is an appeal by All Texas Racing Association, a corporation, and others, defendants below, from a temporary injunction granted at the suit of the state of Texas upon the relation of John R. Shook, criminal district attorney of Bexar county, Tex., plaintiff below, restraining and enjoining them from operating a pari-mutuel system of betting on the results of dog races run on certain premises located in Bexar county.

The questions presented on this appeal are: (1) Whether it is an offense under any provision of the Penal Code of Texas for one to keep a place where dog races are run and betting upon the results of such races is carried on under the pari-mutuel system; and (2) whether the operation of a place where dog races are run and betting upon the results thereof is permitted under the pari-mutuel system is subject to be enjoined as a nuisance under the provisions of articles 4664–4667, Revised Civil Statutes of Texas (1925).

Appellants were engaged in operating a race track upon which dogs were run and in conducting a pari-mutuel system of betting upon the results of such dog races. The place was located outside the city limits of the city of San Antonio. Numerous persons visited the place for the purpose of observing the dog races and betting on the results of the races. Special officers were in attendance to preserve the peace. No disorderly conduct or breach of the peace occurred at any time. The system of betting in vogue, described as the pari-mutuel system, was such that each person desiring to place a bet on the outcome of a dog race would purchase a ticket designating the dog selected by him with the agreement that all money paid in by all participants should be divided pro rata among those holding tick-

ets on the winning dog after first deducting a charge of 10 per cent. of the amount of the ticket for the operators.

Appellants, by their pleadings and testimony, freely admit that the establishment was operated for the purpose of enabling persons to bet and gamble on the results of the dog races.

Article 625 of the Penal Code of Texas (1925) reads, as follows: "Art. 625. *Keeping*.—If any person shall keep, or be in any manner interested in keeping any premises, building, room or place for the purpose of being used as a place to bet or wager, or to gamble with cards, dice or dominoes, or to keep or to exhibit for the purpose of gaming, any bank, table, alley, machine, wheel or device whatsoever, or as a place where people resort to gamble, bet or wager upon anything whatever, he shall be confined in the penitentiary not less than two nor more than four years, regardless of whether any of the above mentioned games, tables, banks, alleys, machines, wheels or devices, or things are licensed by law or not. Any place or device shall be considered as used for gaming or to gamble with or for betting or wagering, if any money or anything of value is bet thereon, or if the same is resorted to for the purpose of gaming or betting."

Article 4664 Revised Civil Statutes of Texas (1925) reads, as follows: "Art. 4664. *Nuisance*.—Any hotel, rooming house or boarding house, country club, garage, rent car stand or other place to which the public commonly resort for board or lodging or commonly congregate for business or pleasure, where intoxicating liquors are kept, possessed, sold, manufactured, bartered or given away, or to which persons resort in assembling of two or more persons to the room for the purpose of drinking intoxicating liquor, or where intoxicating liquors are furnished to minors or to students of any educational institution, or where persons resort for the purpose of gambling, or for the purpose of prostitution, is hereby declared to be a common nuisance. Any person who knowingly maintains or assists in maintaining such a place is guilty of maintaining a nuisance."

Article 4667, Revised Civil Statutes of Texas (1925) reads in part as follows: "Art. 4667. *Gaming and disorderly houses.*—The habitual use, actual, threatened or contemplated, of any premises, place or building or part thereof, for any of the following uses shall be enjoined at the suit of either the State or any citizen thereof: 1. For gaming or keeping or exhibiting games prohibited by law."

Other articles of the statute authorize the district attorney to institute suit in the name of the state to abate and enjoin the maintenance of such a nuisance as is described and referred to in the two articles last mentioned.

A brief review of the subject of the penal laws affecting gambling in this state may be helpful by way of preface to a consideration of the question as to whether betting on dog races is now prohibited by any provision of the Penal Code. It was specifically held by the Supreme Court of Texas in Dunman v. Strother, 1 Tex. 89, 46 Am. Dec. 97, that there was no statute then in existence in Texas forbidding wagers on horse races. Likewise, in McElroy v. Carmichael, 6 Tex. 454, it was held that betting on horse races was not unlawful under the act of 1848, which declared that persons betting at any gaming table, bank or banks, "or at any other gambling device" should be guilty of an offense and punished as prescribed. The Supreme Court, holding that a horse race is not a gambling device, there said: "This reasoning applies with full force to the game of horse racing, if game it can be called. It is, at least, an unusual application, if not a misapplication, of the term. The sport of horse racing has, for centuries, been known by its distinctive designation. It is not prohibited by the law of the land; and it is understood that all attempts in the legislature, for that purpose, have failed; and it cannot be presumed that a prohibition against this well known sport, would lurk under the disguise and cloak of the vague phrase, 'gambling device,' and this in a statute in which certain games were prohibited by name." In Pierce v. Randolph, 12 Tex. 290, the Supreme Court again held that betting on horse races was not prohibited by law. In that connection, the court added: "It is the duty of both Judges and juries to decide on rights according to the laws of the land, and not on their belief of what ought to be law. Their office is not legislative; it is judicial; it is to administer the law as they find it, and not to exalt their own belief or notions above the law, and follow these as a higher code by which the rights of the community are to be regulated or controlled." In Houghton v. State, 41 Tex. 136, the Supreme Court again held: "Betting, of itself, is not a violation of the Penal

Code. It is the betting at games, tables, or banks which are prohibited, that constitute the offense of gaming." Again, it was stated by the Court of Criminal Appeals in Ex parte Powell, 43 Tex. Cr. R. 391, 66 S. W. 298, decided in 1902: "We understand it to be conceded that horse racing is legal, and betting thereon is lawful, in this state."

Article 625 of the Penal Code, above quoted, first appeared in substantially its present form as article 388b in chapter 49, pages 107, 108, of the Acts of 1907, Regular Session. It is contended that the language of that article is sufficiently broad to include betting on dog races. But it is clear that the Legislature did not consider that article or any part of it sufficiently broad to cover betting on horse races, for the Legislature in 1909 (chapter 45) specifically made it an offense to bet on horse races. And, if betting on horse races was not prohibited by that article, betting on dog races, a similar sport, was not so prohibited. The legislative interpretation of the article is strongly persuasive.

A recent legislative construction of the present article 625 is still more forceful. Article 655a, Acts 1933, First Called Session, chapter 10, p. 32 (Vernon's Ann. P. C. art. 655a), legalized betting under the parimutuel system upon the results of horse races. That act specifically provided that: "The said certificate system as herein authorized shall not be construed to be either pool selling, betting or bookmaking within the meaning of Articles 645, 647 and 648 of the Penal Code of the State of Texas, Title 2, Chapter 6, according to the 1925 revision." But there is no reference whatever to article 625. The Legislature, in legalizing betting in this manner on horse races, evidently did not consider that betting on horse races was prohibited by the terms of article 625. Panas v. Texas Breeders & Racing Association, Inc. (Tex. Civ. App.) 80 S.W. (2d) 1020.

Moreover, considering the terms of article 625 in the light of the familiar rule of construction, the rule of ejusdem generis (that words of general description following words of particluar description are to be taken as meaning only things of the same kind as those referred to in the words of particular description), it is clear that the article does not prohibit betting on dog races. The particular subjects of bets condemned were cards, dice, or dominoes, tables, banks, alleys, machines, wheels, or devices. The additional words, "or as a place where people resort to gamble, bet or wager upon anything whatever," have no greater scope of meaning than subjects of like kind and character to those particularly mentioned. The general expressions contained in the article do not make it an offense to bet on dog races. Ex parte Jacobson, 55 Tex. Cr. App. 237, 115 S. W. 1193; Ex parte Muckenfuss, 52 Tex. Cr. App. 467, 107 S. W. 1131; Ex parte Roquemore, 60 Tex. Cr. App. 282, 131 S. W. 1101, 1103, 32 L. R. A. (N. S.) 1186. In the last case, the Court of Criminal Appeals of this state, speaking through Judge Ramsey, said: "That baseball is not specifically named, of course, is clear. What are we to understand by the general term 'and such other amusements as are exhibited and for which an admission fee is charged'? Clearly we think amusements of a like or similar character. This seems to have been the construction given to a similar statute by many courts. It has been said that 'baseball is not prohibited by a statute which provides for the punishment of any one convicted of horse racing, cockfighting, or playing at cards or game of any kind on Sunday.'" (Citing cases.)

The elementary and universal rule that penal statutes must be strictly construed is, also, applicable here. To constitute an act a penal offense, the act must be clearly defined. Under this test, article 625 fails to include conducting dog races and betting thereon. It is clear that the article does not relate to these matters. For a court to constitute itself a censor of the morals and habits of the people and to read into the Penal Code what the Legislature has not written there would be a gross usurpation of power. It is the high duty and responsibility of the judicial department of the government to interpret and apply the law as it is and to refrain from trespassing upon the domain of the legislative department of the government.

It is not an offense under the laws of this state to keep a place where dog races are run and betting upon the results of such races is done under the pari-mutuel system.

The articles of the civil statutes, declaring the maintenance of premises used for gambling or resorted to by people for the purpose of gambling to be a public nuisance and authorizing the granting of an injunction, have reference only to unlawful acts. If the acts done on the premises are not unlawful, that is, in violation of the penal law, the maintenance of the premises

does not constitute a public nuisance. And, since running dog races and betting on them is not unlawful, the keeping of premises for that purpose is not for that reason subject to be enjoined as a public nuisance. As said in 20 Ruling Case Law 385: "Inasmuch as public nuisances always arise out of unlawful acts, that which is lawful cannot be regarded in a legal sense as a public nuisance." Stockwell v. State, 110 Tex. 550, 221 S. W. 932, 12 A. L. R. 1116; Dibrell v. City of Coleman (Tex. Civ. App.) 172 S..W. 550; Reilly v. Hanagan (Tex. Civ. App.) 225 S. W. 797.

The maintenance of a dog race track is not a private nuisance per se. Whether it is a nuisance depends upon the facts of each case. Where, as here, the place was conducted in an orderly manner and without injury to the rights of others, it is not a nuisance. Trueheart v. Parker (Tex. Civ. App.) 257 S. W. 640; Hornsby v. Crystal Beach Park (Tex. Civ. App.) 41 S.W.(2d) 82; Thurman v. State (Tex. Civ. App.) 67 S.W.(2d) 382; Bielecki v. City of Port Arthur (Tex. Com. App.) 12 S.W.(2d) 976. It is to be observed that there is neither pleading nor proof to show that the place, as conducted, was a nuisance in fact. The state has not, even, attempted to raise that issue in the court below or in this court.

The judgment of the district court is reversed; the injunction dissolved; and the cause remanded.