**OAK DOWNS, Inc., et al. v. SCHMID.**

No. 12094.

Court of Civil Appeals of Texas. Dallas.

June 13, 1936.

Dissenting Opinion June 16, 1936.

Rehearing Denied June 20, 1936.

Nathaniel Jacks, of Dallas, for appellants.

Martin B. Winfrey, of Dallas, for appellee.

JONES, Chief Justice.

This is an appeal from a judgment of a district court of Dallas county, on a suit by appellee, R. A. (Smoot) Schmid, as a citizen of Dallas county, to enjoin appellants Oak Downs, Inc., Winfield Morten, Jackson Thurman, F. G. Cameron, and E. W. Morten Realty Company, a corporation, from operating the pari-mutuel or certificate system of betting on dog races at their dog-racing plant in Dallas county.

The petition of appellee was filed in a district court of Dallas county, June 21, 1935, and prayed for a temporary writ of injunction. All parties made appearance, either in person or by their attorneys, on the date fixed by the trial court for hearing, and, after a full hearing, the court, on June 28, 1935, issued the temporary writ of injunction prayed for, and appellants were restrained from operating the pari-mutuel or certificate system of betting in connection with the running of dog races at their said plant. The appeal has been duly perfected to this court.

On the motion of appellants, the appeal was advanced and duly submitted on August 5, 1935. At the time of the submission, it was agreed in open court that the appeal would be submitted on the record without the filing of briefs or the making of oral arguments, and the decision of this court would await the decision of the Supreme Court on a similar case, involving the same propositions of law, then pending in the Supreme Court. The attorneys, therefore, are not subject to criticism for failure to file briefs in a case as important and with a record as voluminous as the one in the instant case.

On May 19, 1936, appellant Morten Realty Company filed a motion, praying that appellants be relieved from said agreement, to delay judgment in this court, for the reason that, when the agreement was entered into, appellants, and appellee as well, believed that only a relatively short time would intervene prior to the decision of the Supreme Court on such case, and prayed that this court at once proceed to judgment on this appeal. This motion was granted. This matter is stated only to show the reason for the long delay of this court in rendering a decision on a case required to be advanced under the law.

On the same date, appellant Morten Realty Company filed a motion in this court, calling attention to the fact that the record shows that the temporary writ of injunction was issued by the trial court, without requiring appellee to execute an injunction bond, conditioned as required by law; that appellants filed a motion in the trial court, to withhold the issuance of the writ of injunction, until appellee had executed an injunction bond; that this motion was overruled by the trial court and the injunction was issued without an injunction bond; that, on appellants' motion, the court required appellee to file the usual cost bond executed by a plaintiff in a civil suit. Appellants prayer in this motion is that the injunction order and writ of injunction issued under such order be declared void, and the injunction dissolved; and, in the alternative, that this court fix the amount of the injunction bond and, in the event that appellee failed to execute such bond, that the order and writ of injunction issued in obedience thereto be declared void. This motion will be considered as one of the issues of the appeal.

Appellee, sheriff of Dallas county, instituted this suit solely in the capacity of a private citizen, under articles 4664 and 4667, R.C.S. The former article declares that: "Any hotel, rooming house or boarding house, country club, garage, rent car stand or other place to which the public commonly resort for board or lodging or commonly congregate for business or pleasure, * * * or where persons resort for the purpose of gambling, or for the purpose of prostitution, is hereby declared to be a common nuisance. Any person who knowingly maintains or assists in maintaining such a place is guilty of maintaining a nuisance."

A provision of the latter article is that: "The habitual use, actual, threatened or contemplated, of any premises, place or building or part thereof, for any of the following uses shall be enjoined in the suit of either the State or any citizen thereof: 1. For gaming or keeping or exhibiting games prohibited by law." Another provision is that: "The Attorney General or any district or county attorney may bring and prosecute all suits that either may deem necessary to enjoin such uses, and need not verify the petition; or any citizen of this State may sue in his own name and shall not be required to show that he is personally injured by the acts complained of."

Article 4666, R.C.S., directs the Attorney General, or the district or county attorney, when either of said officials has reliable information that the nuisance defined in article 4664 exists, to institute suit to abate and enjoin the commission of same.

Appellee's petition shows that Robert L. Hurt, the district attorney of Dallas county, at a suit instituted by appellants, in another district court of Dallas county, had theretofore been enjoined from performing any of the duties enjoined upon him by the provisions of said articles 4666 and 4667, in so far as such official might deem it his duty to have the place where appellants

were operating machines and devices for pari-mutuel or certificate gambling on dog races, instituted at their plant, declared a nuisance and the operation thereof either abated or enjoined. Appellants presented their verified petition to the judge of said other district court, in which it was shown that they intended to operate the pari-mutuel or certificate system of betting at their dog-racing plant in the county of Dallas, and that the district attorney was threatening to, and unless restrained would, attempt to perform the duties enjoined upon him by the provisions of article 4666, and that the district judge, without notice and without knowledge of the district attorney, had issued a temporary writ of injunction restraining him from attempting to perform such duties. This former suit was pending on appeal in this court at the time the instant suit was instituted, and the district attorney of Dallas county was restrained from instituting such a suit. The learned judge who granted the temporary writ of injunction acted on the authority of the decision in the case of All Texas Racing Ass'n et al. v. State, 82 S.W.(2d) 151, 153, by the San Antonio Court of Civil Appeals, which holds, in effect, that gambling on dog races is not prohibited by any statute of this state.

The petition in the instant suit further alleges that the operation of pari-mutuel or certificate betting is in violation of article 655a of the Penal Code of Texas (Vernon's Ann.P.C.), and is especially prohibited by articles 624, 625, 626, 627, and 628 of the Penal Code, and in effect alleges that the pari-mutuel or certificate system of betting is being operated nightly at appellants' plant in Dallas county and, unless restrained by a temporary writ of injunction, will continue to operate in violation of such criminal statutes.

Appellants answered in due order of pleading, by a plea in abatement, because of the pendency of the suit they had instituted against the district attorney in another district court, alleging that the cause of action instituted by appellee was the same cause of action instituted by appellants in the said other suit. They further answered, by general and special exceptions, and by special plea, to the effect that they had the right to operate the pari-mutuel or certificate system of betting at their dog races, because such gambling was not prohibited by law. Their answer is very full and complete, but, in its last analysis, they rest their defense, on the merits of the suit, on the theory that betting on dog races is not a violation of law, and hence such betting cannot be enjoined under the provisions of article 4667.

The questions deemed of importance on this appeal are: (1) Is the injunction void because of the failure of the trial court to require the execution of an injunction bond by appellee, as a condition precedent to the issuance of the temporary writ of injunction? (2) Has this court the power and should it fix the amount of the injunction bond and require its execution by appellee? (3) Did the trial court err in overruling appellants' plea in abatement, because of the pending suit against the district attorney in another district court in Dallas county? (4) Did the trial court err in refusing the motion of appellants to transfer this cause to the district court is which the suit against the district attorney is pending, and consolidate same with said suit? (5) Is the temporary writ of injunction authorized by the statutes of this state? These questions will be discussed in the order above named.

Is the temporary writ of injunction void because no bond was required as a condition of its issuance? No property right of appellee has been invaded or trespassed upon by the activities of appellants in their operation in connection with dog races at their plant, the system of pari-mutuel or certificate betting. Under the rules of equity, therefore, appellee had no right to maintain this suit, because he does not show that he is personally injured. Such right exists only by virtue of the provision in article 4667, supra, which, in addition to the duties placed upon the Attorney General, or the district attorney of Dallas county, gives to any citizen the right to "sue in his own name and shall not be required to show that he is personally injured by the acts complained of.". When a citizen avails himself of such right and institutes the statutory suit to abate or enjoin the operation of the character of nuisance defined in article 4664, supra, he does so as the legislative designated agent of the state, and as the representative of the public. Such is the express holding of our Supreme Court in Ex parte Allison, 99 Tex. 455, 90 S.W. 870, 2 L.R.A.(N.S.) 1111, 122 Am. St.Rep. 653, speaking through Judge Gaines.

Articles 4664 and 4667 are enforcement statutes, designed to make certain that prohibited gambling in this state shall not operate. The Legislature did not deem it

sufficient to rest the enforcement of anti-gambling laws on the usual method of prosecuting the offenders in the criminal courts, but placed in the hands of its prosecuting officers, by the enactment of these statutes, the very potent weapon of the injunction powers of civil courts. Neither did the Legislature deem it a sufficient guarantee to the public to rest this powerful weapon of law enforcement alone on the initiative of the state's prosecuting officers, but gave the right to any citizen of this state to invoke by suit, in his own name, the same power of the civil courts given to the prosecuting officers; and it is the duty of the courts to give full recognition to the legislative intent clearly manifested by these enactments.

The wisdom of the enactment, giving a citizen equal authority with the designated prosecuting officers, to maintain this character of suit, is forcibly illustrated by the conduct of appellants in the instant case. Appellants owned a dog-racing plant, but evidently did not believe that the innocent sport of dog racing was a sufficient allure to the public to make such sport remunerative, but they apparently believed that the glamour of gambling on this innocent sport, through the pari-mutuel system of betting, would be sufficient to attract the public, and thereby, through such means, make dog racing a remunerative business. Appellants, in order to make themselves secure in such undertaking, instituted a suit against the district attorney, and secured, ex parte, a temporary writ of injunction against either a criminal prosecution or a civil injunction suit. With the district attorney thereby rendered impotent to proceed against them, appellee accepted the duty placed on him as a citizen, and instituted the instant suit.

█ Appellants do not contend, if the instant suit were instituted by the district attorney in the name of the state, that an injunction bond would be a prerequisite to the issuance of the temporary writ of injunction, but claim that the question is entirely different when a citizen, clothed with the same powers as the district attorney and authorized to act for the state to accomplish the same purpose, is not exempt from giving a bond before they can be enjoined from committing acts, which the trial court decreed to be a nuisance under article 4664. We cannot agree to appellants' contention in this respect. To do so would place a great handicap on a citizen in bringing the suit, and would deny full recognition to a legislative enactment. There is nothing in article 4667 to imply that a bond should be required. Do other statutes compel the giving of a bond?

Title 76, R.C.S., applies to injunctions; article 4642, the first article of said title, provides that: "Judges of the district and county courts shall, in term time or vacation, hear and determine applications for and may grant writs of injunction returnable to said courts in the following cases." Then follow the well-known subdivisions, giving distinct grounds upon which the trial courts are authorized to grant injunctions. All of these grounds relate to private suits between private parties, and under none of them is a court authorized to entertain the instant suit or to grant the instant writ of injunction. Articles 4647, 4648, and 4649 relate only to the granting of a temporary writ of injunction, or restraining order, on an ex parte hearing, and govern all of those cases that arise under one or more of the specified grounds for granting an injunction under article 4642, and do not relate to the particular cases provided for under articles 4667 and 4668 of the same title. Article 4647 forbids the judge to grant an ex parte injunction, except on a verified petition containing plain and intelligent statements of the grounds for such relief. Article 4648 provides that, if it appears to the judge to whom the verified petition is presented that the facts stated will entitle the petitioner to the writ, the judge "shall indorse thereon or annex thereto his written order directing the clerk of the proper court to issue the writ of injunction prayed for, upon such terms and under such modifications, limitations and restrictions as may be specified in said order. The judge shall also specify in such order the amount of the bond to be given by the applicant as a prerequisite to the issuance of the writ." Article 4649 provides for the execution of the required bond and describes the bond to be executed. Article 4650 provides that the plaintiff, presenting the petition for injunction, shall then file such petition, together with the order granting the temporary injunction, and directs the clerk to docket same, unless the petition is filed in a pending suit.

█ Articles 4648 and 4649, the only articles in the statutes that make a bond a prerequisite to the issuance of a writ of injunction, clearly refer to temporary writs of injunction, granted ex parte, under one of the subdivisions of article 4642. Oil

Lease & Royalty Syndicate v. Beeler (Tex. Civ.App.) 217 S.W. 1054 (writ of error denied). These articles clearly do not refer to the particular class of injunctions authorized by article 4667, which calls for an adjudication that the defendant in a suit authorized by such article is guilty of maintaining a nuisance under the provisions of article 4664, as a prerequisite to the granting of the temporary writ of injunction. In the instant case, there was a full hearing accorded the appellants, and under such hearing appellants were adjudged guilty of maintaining a nuisance, and the temporary writ of injunction was then ordered to be issued. We think the court did not err in refusing to require an injunction bond, and the motion under consideration is overruled.

■ The alternative contention of appellants that this court fix the amount of such injunction bond and require appellee to execute same is refused, for the reason that the giving of any injunction bond, after a hearing and an adjudication that appellants were guilty of maintaining a nuisance, is not required.

■ Did the trial court err in overruling appellants' plea in abatement, because of the said pending suit in another district court of Dallas county against Robert L. Hurt, district attorney?

"There is no principle better settled," says 1 Amer.Jur. § 14, p. 27, "than the general rule of law that the pendency of a former action in a court of competent jurisdiction, within the same state or jurisdiction, between the same parties, and involving the same subject-matter and cause of action, wherein all the rights of the parties thereto may be fully and finally determined and adjudicated, may be asserted as a ground for the abatement of the second action. The identity in these particulars should be such that if the pending suit had already been disposed of, it could be pleaded in bar as a former adjudication of the same matter between the same parties and, unless each of these elements is present, the pendency of one action will not operate to abate a subsequent one."

This is the common-law rule and, after some confusion in decisions, it is now recognized as the rule in this state. Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063; Benson v. Fulmore (Tex.Com.App.) 269 S.W. 71; 1 Tex.Jur. pp. 93, 94, § 67, and cases cited in notes.

■ A mere casual examination of the two suits will disclose that the cause of action alleged in the former suit is not identical with the cause of action alleged by appellee in the instant suit, that a judgment in one suit would not be a bar to the other suit, and that the parties are not identical. The prior cause of action was one filed by appellants to enjoin the district attorney both from prosecutions in the criminal courts and from instituting proceedings to declare appellants guilty of gambling on dog races, and to interfere with them in the pari-mutuel system of betting.

The instant suit is a statutory action, instituted by appellee as a private citizen, in behalf of the public, to prevent the maintenance of a nuisance by the operation of pari-mutuel betting on dog races. The two suits are fundamentally different; appellee was neither a party plaintiff or defendant in said prior suit, and it is elementary that, not being in any way a party to said suit, he would not be bound by any judgment entered therein. The contention on this question is overruled.

■ There was no error in the court's overruling appellants' request to transfer the instant suit to the district court in which the prior suit was filed. That was a matter, at most, resting in the discretion of the trial court, and no abuse of discretion is shown. This contention is overruled.

■ Is the action of the trial court in granting a temporary writ of injunction authorized under article 4667, supra? The effect of appellants' answer is to admit that its dog-racing plant is a place where persons assemble for the purpose of gambling under the pari-mutuel or certificate system of betting on dog races. It is held, without exception, that betting on races of any kind under the pari-mutuel scheme is gambling. Hurt v. Oak Downs, Inc. (Tex.Civ.App.) 85 S.W.(2d) 294, 296; 27 C.J. 976. This admission places appellants' plant in the category of nuisances defined and condemned in article 4664, supra. However, before such nuisance could be abated by injunction under the provisions of article 4667, supra, the gambling carried on at appellants' place must be a species of gambling prohibited by law. The controlling question for determination is: Do our gambling laws prohibit betting on dog races?

■ This question was before the Court of Civil Appeals at San Antonio, in the

case of All Texas Racing Ass'n v. State, supra, and in a very elaborate opinion by Chief Justice Bickett, then of that court, it was held that gambling on dog races violated no anti-gambling statute of this state. The question was up before this court in the case of Hurt v. Oak Downs et al., supra, in which it was held by the majority of this court, in a very elaborate opinion by Associate Justice Looney, that betting on dog races is prohibited by articles 624 and 625 of our Penal Code. A writ of error has been granted in each of these cases, and they are now pending before the Supreme Court. In the absence of a decision by the Supreme Court, the majority adheres to the opinion of this court in the Hurt Case, and adopt the reasoning and authorities cited by Judge Looney in such case, and again hold that betting on dog races is in violation of articles 624 and 625 of our Penal Code. It would be a useless consumption of time to reargue this question.

It necessarily follows that, in the opinion of the majority of this court, the judgment of the lower court should be affirmed, and it is so ordered.

Affirmed.

BOND, Justice (dissenting).

The only statute under which the appellee, R. A. (Smoot) Schmid, claims the right to bring this suit as a private citizen is article 4667 of our Revised Statute, which authorizes "the habitual use, actual, threatened or contemplated, of any premises, place or building or part thereof, * * * be enjoined at the suit of either the State or any citizen thereof * * * for gaming or keeping or exhibiting games prohibited by law."

The right to enjoin by a private citizen is limited to the prohibited games mentioned in article 4667 (act passed in 1905, c. 153). The right to enjoin by the Attorney General or a district or county attorney to abate a nuisance under articles 4664, 4665, and 4666, (acts passed in 1923) limits such right alone to the heads of the executive departments of the state; and provides that such suits shall be filed "in the name of this State." A private citizen has no right to enjoin a nuisance under the statutes relating to nuisance without showing existing rights of his own.

The primary question, therefore, in this case is: Is betting or wagering on dog races prohibited under our gaming statutes? The statutes expressly make it an offense to bet or wager at any game of cards, dice, or dominoes; at any table or bank; at any game of muggins, crack-loo, crack-or-loo; or at the game of matching money or coin; upon the result of any election; at any game of baseball or football; and, prior to the act of 1933 (see Vernon's Ann.P.C., art. 655a), on any horse race (Penal Code, art. 615 et seq.). It is the betting or wagering at the games, tables, and banks, expressly enumerated in the statutes, which are prohibited by law, and to which article 4667 is directed.

The Supreme Court, as early as McElroy v. Carmichael, 6 Tex. 454, and in all cases since that time, announces the rule that betting or wagering is not illegal merely as betting or wagering. An examination of all of the gaming statutes of this state fails to show that the Legislature, in the enactment of the several statutes prohibiting and penalizing games specifically described in the various statutes, betting on dog races, considered such betting as gaming, or keeping, or exhibiting games. It is obvious that dog racing is not specifically mentioned in the statutes; and, if such is a game prohibited by law, it must be construed into the words of general import following the specifically designated prohibited games, which reads: "If any person shall bet or wager * * * upon anything in any place where people resort for the purpose of betting or wagering, he shall be fined not exceeding fifty dollars." Pen.Code, art. 624.

The opinion of the majority of this court, in the case of Hurt v. Oak Downs (Tex. Civ.App.) 85 S.W.(2d) 294, 300, holds that the keeping of premises as a place for dog races and for betting on results thereof under the pari-mutuel system is an offense prohibited by the statute. I took occasion, in that case, to express my dissent, prefacing my remarks with the statement that, "until the Legislature has enacted a statute prohibiting betting or wagering on dog races, I content myself with the laws as written, conceiving it to be the duty of the judiciary to decide on rights, regulated or controlled, according to the laws of the land, and not on belief of what ought to be the law. The judiciary should not legislate, but only determine the law as enacted by the legislative branch of the government, and not exalt its belief or notion above the law, and follow such as a higher Code." I reaffirm the statement. Matters not included within the penal statutes should not be

read into it by judicial construction, but the legislative intent should be ascertained from words of the act itself.

In the Hurt Case, supra, the opinion of the majority did correctly state: "It is the peculiar province of the Court of Criminal Appeals to construe penal statutes, we have been furnished with no decision of that court construing the statutes in the respects in which they are now being construed." Since that announcement we are not without precedent, for the Court of Criminal Appeals, in the case of Thomas v. State, 91 S.W.(2d) 716, 717, had under consideration practically the same question as here. In that case an indictment charged that Thomas "did then and there unlawfully keep and was then and there interested in keeping a certain premises, building, room and place there situated for the purpose of being used as a place to bet, wager and gamble on a horse race or horse races and as a place where people would then and there resort to bet, wager and gamble on horse races." The opinion states that: "The testimony adduced upon the trial shows that appellant was engaged in maintaining on the second floor of the River Oaks Building situated on Fannin street in the city of Houston in Harris county, Tex., a room and rooms where quite a number of people resorted for the purpose of betting on horse races to be run in this state and elsewhere." The record further shows that betting and wagering was carried on at said place. The statute under consideration in that case and here involved did not specifically name horse race and horse racing as an offense prohibited by law. The Court of Criminal Appeals, in the cited case, said that the words "'or as a place where people resort to gamble, bet or wager upon anything whatever' (article 625) is but a cleaning up clause in the construction of which the rule ejusdem generis must be resorted to, and when we apply that rule we find that it refers to and means acts of like or similar nature as those specifically mentioned in said article. It does not seem reasonable that any one would seriously contend that horse racing, bookmaking or pool selling are similar in nature as gambling on cards, dice, or dominoes. We believe that what we have said here is supported by the opinion of this court in the case of Ex parte Roquemore, 60 Tex.Cr.R. 282, 131 S.W. 1101, 32 L.R.A.(N.S.) 1186, and authorities there referred to. It seems that it was the intention of the Legislature to prohibit the operation and maintenance of a place where those games are engaged in which at the time article 625, supra, was enacted were most commonly and usually resorted to for gambling in rooms and houses, and not horse races and football or baseball games."

The holding of the Court of Criminal Appeals in the above cause, I think, effectually disposes of the issue before us. See, also, All Texas Racing Ass'n et al. v. State (Tex. Civ.App.) 82 S.W.(2d) 151; Panas v. Texas Breeders & Racing Ass'n, Inc., et al. (Tex.Civ.App.) 80 S.W.(2d) 1020.

In the case of Panas v. Texas Breeders & Racing Ass'n et al., supra, a private citizen sought an injunction against the association, alleging that "'on and prior to the 22nd day of November, A. D. 1934, that said defendants and each of them above mentioned were using, and are now using, concerned in using, and are actually and habitually using, and are threatening and contemplating the use of premises, places, buildings, and parts thereof, situated on described tract of land in Harris County, Texas' (here follows a full description of the premises, the race track, and buildings owned and operated by the defendant corporation and known as Epsom Downs); that 'the said defendants, and each of them, are so using, and are aiding and abetting some other person and each other in the use of the above mentioned and described premises, places, and buildings, and a part thereof, for the purposes of gaming and of keeping and exhibiting of games prohibited by the laws of the State of Texas.'" Chief Justice Pleasants of the Galveston Court of Appeals (writ dismissed by the Supreme Court) said in that case: "When the statute was enacted giving a private citizen the right to bring a suit to enjoin the keeping or exhibiting of games prohibited by law, the Legislature knew of the general gaming statute and also of the statute prohibiting betting on horse racing or conducting a pool for betting on horse racing, but did not include such offense among those for the prevention of which the private citizen was given the right to sue for an injunction. Section 4 of the Act of 1905 (Acts 1905, c. 153), giving the private citizen the right to bring suit to enjoin violations of our gaming statute, declares as a reason for its passage that there was no adequate remedy for the suppression of gaming houses."

If the words of general import, the cleaning up clause of the statute under consideration, following the specific enumerated prohibited offenses, do not make horse rac-

ing and the betting thereon an offense prohibited by law, then certainly it does not apply to dog racing. So, there being no law of this state prohibiting the keeping of a place where dog races are run and betting upon the result of such races under the pari-mutuel system, the appellee has no law to interfere with appellants' rights by injunction.

It will be further observed that article 4667, supra, authorizes "gaming or keeping or exhibiting games prohibited by law" shall be "enjoined at the suit of either the State or any citizen thereof"; and further provides (subdivision 3): "The Attorney General or any district or county attorney may bring and prosecute all suits that either may deem necessary to enjoin such uses, and need not verify the petition; or any citizen of this State may sue in his own name and shall not be required to show that he is personally injured by the acts complained of."

Before an applicant for a writ of injunction is entitled to the writ, article 4648, R.S. 1925, provides: "The judge shall also specify in such order the amount of the bond to be given by the applicant as a prerequisite to the issuance of the writ"; and article 4649, R.S., provides: "Upon the filing of the petition and order of the judge and before the issuance of the writ of injunction, the complainant shall execute and file with the clerk a bond to the adverse party, with two or more good and sufficient sureties, to be approved by such clerk in the sum fixed in the order of the judge granting the writ, conditioned that the complainant will abide the decision which may be made therein, and that he will pay all sums of money and costs that may be made therein, and that he will pay all sums of money and costs that may be adjudged against him if the injunction be dissolved in whole or in part."

An examination of all of our civil statutes fails to show that the Legislature has enacted a law authorizing a suit by a private citizen to enjoin another from the free lawful use and occupancy of his own premises, and a court of equity cannot exercise its power to care for and protect the conscientious scruples of a private citizen by an invasion of the province of a court of criminal jurisdiction. No private citizen has such interest in the welfare of the enforcement of the criminal laws as would justify an appeal to a court of equity to restrain another citizen from doing that which does not violate an existing right of his own.

Prior to the statutory authority under consideration here, the rule was that an injunction would not issue to restrain the commission of an act punishable under the criminal statutes, where no property rights of the complainants was involved. York v. Ysaguairre, 31 Tex.Civ.App. 26, 71 S.W. 563; Manor Casino v. State (Tex.Civ. App.) 34 S.W. 769; Barry v. State (Tex. Civ.App.) 212 S.W. 304; Featherstone v. Independent Service Station (Tex.Civ. App.) 10 S.W.(2d) 124. The Legislature, recognizing the limitations existing on a private citizen to enjoin another from "gaming or keeping or exhibiting games prohibited by law," enacted the clause that such citizen "shall not be required to show that he is personally injured by the acts complained of." The statute providing the remedy for a private citizen to enjoin the violation of the prohibited games added nothing to such citizens' rights which did not exist prior to its enactment, except that such citizen be not required to show that he is personally injured by the acts complained of.

In enacting the law under consideration, the Legislature authorized a private citizen to enjoin the violation of the prohibited games mentioned in the article; but the grant of authority did not confer upon such citizen the right to bring a suit in the name of the state, or for the state, or without the giving of a bond. The act provides for an injunction by either the state or by a private citizen, which clearly indicates that, in such proceedings, the private citizen would not be representing the state. Unmistakably, the intent and purpose of the statute was to delegate the Attorney General or the district or county attorney, as the agencies of the state government, to institute such suits in the name of the state, and, as heads of an executive department of the state government (section 1, art. 4, Texas Constitution), a bond could hardly be required of such departments. Herring v. Houston Nat. Exch. Bank, 113 Tex. 264, 253 S.W. 813. Such is not accorded to a private citizen. Express authority to institute a suit does not obviate the necessity of complying with the statute specifically requiring a bond to be given to the applicant as a prerequisite to the issuance of a writ of injunction. Article 4648, R.S.

Our statutes are numerous where authority is granted to private citizens to en-

join the acts and threatened acts of another, but none, so far as I am able to find, authorizes such action without the giving of bond. Articles 4635 and 4636 grant, in divorce cases, the right to either party to an injunction, under certain contingencies. The Supreme Court of Texas, speaking through Justice Phillips, in the case of Ex parte Coward, 110 Tex. 587, 222 S.W. 531, said: "Under the statute the giving of a bond is made a condition precedent to the issuance of an injunction. This requirement applies to divorce suits brought by the wife, notwithstanding Articles 4638 and 4639 [now 4635 and 4636.] Wright v. Wright, 3 Tex. 168. The Judge was therefore without power to grant the injunction without requiring a bond from the plaintiff, and the injunction was accordingly void. Williams v. Huff, Dallam, Dig. 554; Diehl v. Friester, 37 Ohio St. 473; Lawton v. Richardson, 115 Mich. 12, 72 N.W. 988." This has been the uniform holding of every court in this state, and they are numerous.

The provision of articles 4647 and 4648, requiring that the complainant shall give bond, is mandatory, and the authorities hold that a writ of injunction issued without bond is void. See Phoebus v. Connellee (Tex.Civ.App.) 228 S.W. 982; Boykin v. Patterson (Tex.Civ.App.) 214 S.W. 611; Paine v. Carpenter, 51 Tex.Civ.App. 191, 111 S.W. 430; Houston Ice & Brewing Co. v. Clint (Tex.Civ.App.) 159 S.W. 409; Marshall v. Spiller (Tex.Civ.App.) 184 S. W. 285; Cole v. Varner (Tex.Civ.App.) 246 S.W. 410; Pruett v. Fortenberry (Tex. Civ.App.) 254 S.W. 592; West Texas Abstract & Guaranty Co. v. Stolte (Tex.Civ. App.) 256 S.W. 632; American Rio Grande Land & Irrigation Co. v. Ford (Tex.Civ. App.) 260 S.W. 277; Holland Texas Hypotheek Bank of Amsterdam, Holland, v. Linscome (Tex.Civ.App.) 37 S.W.(2d) 268; Bettinger v. North Fort Worth Ice Co. (Tex.Civ.App.) 278 S.W. 466; White v. Perkins (Tex.Civ.App.) 65 S.W.(2d) 423; Johnson v. McMahan (Tex.Civ.App.) 40 S.W.(2d) 920; Smith v. City of Dallas (Tex.Civ.App.) 36 S.W.(2d) 547; Corzelius v. Cosby Producing & Royalty Co. (Tex. Civ.App.) 52 S.W.(2d) 270; Alpha Petroleum Co. v. Railroad Commission (Tex.Civ. App.) 59 S.W.(2d) 374; Rogers Ranch Co. v. Darwin (Tex.Civ.App.) 89 S.W.(2d) 828; Yount-Lee Oil Co. v. Federal Crude Oil Co. (Tex.Civ.App.) 82 S.W.(2d) 987.

In this case, the writ of injunction was ordered issued without requiring of the applicant the posting of a bond, as required by the statute; no bond was filed and approved by the clerk; and the writ was issued and served on appellants, thereby depriving them of the use and enjoyment of their property to their hurt and damage.

The record reveals that appellants have investments in real estate and personal property to an amount of more than $50,000; had a labor employment pay roll of more than $800 per day and numerous outstanding contracts with concessionaires involving many thousands of dollars, besides an enormous profit from the operation of the dog races. The majority opinion in the Hurt Case, supra, says: "We are of opinion that plaintiffs [appellants herein] show that they will suffer a serious property damage." Clearly, the Legislature did not intend that a private citizen, one or many, be empowered to destroy another's property and property rights, and damage him, on every fanciful idea or notion, on hearing or otherwise, that such person is violating the gaming law, without the posting of a bond, conditioned that he will pay the damage which might result from his improvident act.

The majority opinion holds that the statutes requiring an injunction bond, as prerequisite for the issuance of the writ of injunction, applies to only ex parte injunction orders and not to temporary injunction orders made on hearing. Such holding is in conflict with every decision in this state, so far as the writer is able to find. There is not an authority cited in the opinion holding that the statutes apply only to ex parte injunctions, and the statutes themselves obviously make no such distinction.

In the case of Houston Ice & Brewing Co. v. Clint (Tex.Civ.App.) 159 S.W. 409, 416 (writ of error refused [Tex.Sup.] 169 S.W. 411), Judge Fly, writing the opinion for the San Antonio Court of Appeals, said: "The statute (Article 4654, R.S.1911 [now article 4649]) requires that before the issuance of the writ of injunction a bond shall be given by the party applying for the same. There is only one exception to that requirement, and that is in case where the state is the complainant. It may seem anomalous to require an officer of the court to give the bond in question when the property is in custodia legis, but that is a matter addressed to the legislative rather than the judicial branch of the state government. [Citing authorities.]"

The injunction, in my opinion, should be dissolved, for the reason appellee posted no

1050

bond as required by law. The statute is mandatory, the order authorizing the issuance of the writ of injunction is void, and, in my opinion, will not support a conviction for contempt in violating the order. Ex parte Coward, supra. An injunction bond is required in every case, except where the injunction is obtained by the state. A private citizen is not an agent of the state, that he can act in an official capacity as an arm of the government.

It clearly was not the intention of the Legislature that the private citizen bringing the suit was such an agent of the state. The statute specifically states that such prohibited acts shall be "enjoined at the suit of either the state or any citizen thereof." It seems to me that there would have been no necessity to make such alternate agencies, if the citizen was delegated to enjoin the prohibited acts for the state. If such construction could be given the statute, then the state was a party to the pending suit of Oak Downs v. Hurt, District Attorney of Dallas County, facts stated in Hurt v. Oak Downs, Inc. (Tex.Civ.App.) 85 S.W. (2d) 294. The two suits, in such event, were substantially the same cause of action and between the same parties, and under the holdings of this court, in Long v. Long, 269 S.W. 207, and Clack v. Southwest Dairy Products Co., 95 S.W.(2d) 1038, this case should have been abated. The prior suit (Oak Downs v. Hurt) was against the state, acting by and through its agent, Rob't. L. Hurt, district attorney of Dallas county, Tex.; and, if this suit can be sustained, as one brought by Schmid, a private citizen, for the state, then the ultimate determination of the issues in the prior suit, undoubtedly, will be res adjudicata to appellee in this cause. The primary purpose of the Hurt suit is the same as here. If the state is a party here, the state undoubtedly was a party there; therefore appellants' plea of abatement should have been sustained. I am not in accord, however, that Schmid, as a private citizen, is representing the state in this case, and entitled to proceed by injunction without the giving of the bond required by law.

A further discussion is unnecessary. I register my dissent; the cause should be reversed and judgment rendered, dissolving the temporary injunction.

### On Motion for Rehearing.

LOONEY, Justice.

In the original opinion, in which I concur, Chief Justice JONES propounded this question: "Do our gambling laws prohibit betting on dog races? and answered same in the affirmative by adopting the reasoning and authorities cited in Hurt v. Oak Downs, Inc. (Tex.Civ.App.) 85 S.W.(2d) 294, 296. In addition to reasons stated in Hurt v. Oak Downs, Inc., for the conclusion reached by the majority to the effect that it was the intent of the Thirtieth Legislature (1907) in enacting House Bill No. 84 (chapter 49, Vernon's Ann.P.C. art. 615 et seq.), which includes the statute under consideration, to prohibit all wagering and betting on any and every device and thing, including wagering and betting on dog races, attention is called to the language of the caption of this bill, stating its purpose to make it unlawful to bet and wager on games specifically mentioned, "or upon anything whatsoever"; and to the emergency clause, which states that: "The prevalence of gambling in this state in defiance of good morals and of a sound public policy and the inadequacy of the statutes of this State to suppress the evil, create an imperative public necessity demanding the suspension of the constitutional rule requiring bills to be read on three several days, and said rule is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted." The bill was adopted in the House by the vote of 99 yeas to 7 nays, and in the Senate by the vote of 29 yeas to 1 nay.

Thus we think is disclosed an intention on the part of the Legislature to stamp out the evil of gambling, without regard to the thing, device, contest, or result upon which the wager is placed, whether known and named or not.

Appellants' motion for rehearing is overruled.

BOND, J., dissents.