**Reversed and Remanded and Opinion filed June 12, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00023-CV

---

### ADI WEINBERG, Appellant

### V.

### DOVEV BAHARAV AND DVIR BIRGIR, Appellees

---

**On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2015-76112**

---

## O P I N I O N

Appellant Adi Weinberg appeals from the trial court's grant of traditional summary judgment favoring appellees Dovev Baharav and Dviv Birgir. Appellees sued Weinberg for breach of a settlement agreement that Weinberg asserts he signed under duress, specifically due to threats of criminal prosecution. Because Weinberg raised a material issue of fact on each of the elements of his duress affirmative defense, we reverse the trial court's judgment and remand for further proceedings.

## *Background*

According to his declaration attached to his response to the motion for summary judgment, Weinberg operated a real estate business that primarily involved the buying, renovation, and resale of buildings. The funds used to purchase the properties often came from outside investors. When a property was sold, some of the proceeds might be returned to investors as profit, but the ideal was for the bulk of the sale proceeds to be rolled into the next purchase. Weinberg explained that sometimes properties would need to be held for a time before market conditions could make resale profitable. Some of the investors in the business were Weinberg's family members including Birgir, who is Weinberg's cousin, and Baharav, who is the husband of another cousin of Weinberg's.

Weinberg further detailed multiple problems that beset the business and the relationships. Despite these difficulties, Weinberg states that he continued to do business with Baharav, Birger, and other family investors "because the business model was essentially sound." However, as market conditions worsened and properties had to be held longer to make a profit, Weinberg says that Baharav became impatient and began insisting that properties should be "dumped . . . at unfavorable prices" just so Baharav could receive payment on his investment.

As Weinberg explained in his declaration, the situation came to a head at a meeting of family investors. During the meeting, Baharav threatened to have Weinberg arrested and charged with crimes if he did not sign an agreement Baharav presented, which is the agreement Baharav and Birger sued under.

The agreement at issue states in part as follows:

[Weinberg] has admitted that he has illegally taken monies belonging to the creditors in this agreement without any permission and without informing the creditors before taking the funds. . . .

2

Since the majority of the creditors are relatives of [Weinberg] and out of the goodwill in their hearts they have created this agreement between themselves and [Weinberg] to collect the illegally gotten monies, rather than pursue both civil and criminal actions against [Weinberg] at this time. The creditors still maintain their rights to pursue any and all legal actions available under the law to retrieve their money if [Weinberg] doesn't abide by any portion of this agreement.

The agreement then lists amounts that Weinberg purportedly owed to each of the listed investors, and repayment terms for the supposed debts.

Weinberg asserted in his declaration that such charges "would have effectively ruined and terminated my business, deprived me of future business and profits, and destroyed my family, especially my father, who is a Rabbi." Under this "duress and coercion," Weinberg says that he signed the agreement and since then has "attempted to accommodate [Baharav] out of fear that he would make these criminal accusations." Weinberg further maintains that he felt he had no other choice than to sign, even though he did not agree with Baharav's position or the valuations set forth in the agreement. Moreover, Weinberg said that Birger and the other family signatories to the agreement went along with Baharav's demands because—while they understood Weinberg "had not committed any bad acts"—they wanted to keep peace within the family and avoid the public scandal that a criminal prosecution would entail.[1]

Weinberg specifically denied having committed any criminal acts or taken any money out of the business for his personal gain, notwithstanding the language of the agreement. He further insisted that no purchases or expenditures had ever been "made without full disclosure to all parties, including [Baharav and Birger]."

---

[1] In addition to Weinberg, Baharav, and Birger, two other investors signed the agreement. These investors, however, did not participate in the trial court proceedings in this lawsuit and are not parties to this appeal.

3

In his declaration, Weinberg notes that he has paid approximately $40,000 to investors since signing the agreement. Appellees assert Weinberg stopped making payments as of June 1, 2013. On December 17, 2015, appellees' counsel sent a Notice of Default and Demand for Payment to Weinberg, demanding that he make the past due payments.

In their second amended petition, appellees each asserted a cause of action for breach of contract based on Weinberg's failure to make payments pursuant to the parties' agreement. In his answer, Weinberg generally denied the accusations against him, and, among other defenses, he asserted the affirmative defense of duress. In their motion for summary judgment, appellees presented evidence that they contended proved Weinberg breached the agreement as a matter of law and thereby caused them specified damages. Among other arguments in his response, Weinberg again asserted duress, and he provided the declaration discussed above in support.[2] The trial court granted appellees' motion for summary judgment, awarded Baharav $93,615 and Birger $72,270 plus interest and attorney's fees.

In his appeal, Weinberg raises four issues, contending (1) he presented evidence raising a material issue of fact on each element of his duress affirmative defense, (2) appellees failed to establish the amount of their alleged damages as a matter of law, (3) all signatories to the agreement were not made parties to the lawsuit, and (4) the evidence was insufficient to support the amount the trial court awarded to appellees for attorney's fees. Because we conclude that Weinberg raised a material issue of fact on each element of duress, we need not consider his other issues.

---

[2] Weinberg additionally provided a declaration from Lindsey Certo, who owns a property management company that worked with Weinberg and Baharav on a number of projects.

### *Standards of Review*

We review a trial court's grant of summary judgment de novo. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A plaintiff who moves for summary judgment has the burden of conclusively proving all the elements of the asserted cause of action as a matter of law. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). A party seeking to avoid summary judgment by virtue of an affirmative defense bears the burden of raising a material issue of fact on each element of that defense. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). A nonmovant asserting an affirmative defense is not required to prove the affirmative defense as a matter of law—raising a fact issue is enough. *Id*. In conducting our review, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). Evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

### *Duress*

Duress is an affirmative defense applicable to a breach of contract cause of action. While there are several applications and definitions of duress, "[A] common element of duress in all its forms . . . is improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with another person's exercise of free will and judgment." *Dallas Cty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 878-79 (Tex. 2005); *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 706 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The threat must also be imminent. *Bolton*, 185 S.W.3d at 879. Further, duress must be established based on

the conduct of the party accused of duress, not the emotions of the purported victim. *E.g., Parks v. Affiliated Bank*, No. 05-16-00784-CV, 2018 WL 2057545, at *5 (Tex. App.—Dallas May 3, 2018, no pet. h.) (mem. op.). Accordingly, to avoid summary judgment based on his duress affirmative defense, Weinberg was required to present evidence that Baharav (1) threatened Weinberg with improper or unlawful conduct that was (2) imminent and (3) intended to and (4) did interfere with his exercise of free will and judgment.

**Does duress based on threats of criminal prosecution require proof of innocence?**

The law has long recognized that duress can result from threats of criminal prosecution. An issue of some inconsistency in Texas jurisprudence, however, is whether in asserting duress due to a threat of criminal prosecution, a defendant need establish his or her innocence of the offense in question. In other words, is it improper or unlawful conduct to threaten criminal prosecution in order to pressure someone to sign a contract regardless of whether the person is guilty of an offense?

Appellees cite a 1928 case from the Fourth Court of Appeals for the proposition that there is no duress unless a person threatening criminal prosecution has no legal right to do so: *Borderland Hardware Co. v. Saenz*, 95 S.W.2d 1049, 1050 (Tex. Civ. App.—San Antonio 1928, no writ).[3] *Borderland Hardware* dealt with a situation in which the threatened criminal prosecution was against a relative of the person who then executed an agreement due to the threat. 95 S.W.2d at 1050. The court noted that in that scenario, the person executing the contract was not doing

---

[3] Appellees also cite *Gigout v. C & L Constructors, Inc.*, No. 01-96-01109-CV, 1999 WL 191324, at *4 (Tex. App.—Houston [1st Dist.] Apr. 8, 1999, pet. denied) (not designated for publication). However, *Gigout* is an unpublished, pre-2003 case and therefore not precedential. *See, e.g., Guardianship of A.S.K.*, No. 14-15-00588-CV, 2017 WL 3611845, at *4 n.7 (Tex. App.—Houston [14th Dist.] Aug. 22, 2017, pet. denied) (mem. op.).

6

so "in order to escape the consequences of his own crime" but to save his relative from prosecution. *Id*. The court held "while it may be true that an accused person cannot avoid contracts executed by him under threats of lawful prosecution," that under the facts presented, duress could be asserted to void the contract. *Id*. Interestingly, while the case *Borderland Hardware* relies on, *Gray v. Freeman*, involved a similar fact pattern and arrived at the same result, the *Gray* court stated more generally that "the guilt or innocence of the wronged party, or the lawfulness or unlawfulness of the threats, are immaterial." 37 Tex. Civ. App. 556, 559-62, 84 S.W. 1105, 1106-08 (1905).[4]

Indeed, the majority position in Texas, as well as other states, appears to be that the threat of criminal prosecution to pressure someone to execute a contract is itself a wrongful use of the criminal justice process that may constitute duress sufficient to void the resulting agreement. *See, e.g., Sims v. Jones*, 611 S.W.2d 461, 462 (Tex. Civ. App.—Dallas 1980, no writ) ("It has long been held that threats of criminal prosecution are sufficient to give rise to duress. The modern view is that threats of criminal prosecution may give rise to duress even where the party threatened is actually guilty of an offense."); *Pierce v. Estate of Haverlah*, 428 S.W.2d 422, 425 (Tex. Civ. App.—Tyler 1968, writ ref'd n.r.e.) ("[T]he threatened prosecution need not be for a crime or offense of which the party threatened is not guilty, but . . . duress may arise from threats of prosecution for an offense of which

---

[4] Of further note, in both of the opinions appellees cite, the respective courts ignored and failed to follow their own prior precedent. *See Greene v. Bates*, 424 S.W.2d 5, 8-11 (Tex. Civ. App.—Houston [1st Dist.] 1968, no writ) (preceding *Gigout* and holding evidence was sufficient to require submission of duress issue to a jury without considering whether there was evidence of guilt of the threatened criminal charges); *Sabinal State Bank v. Ebell*, 294 S.W. 226, 227 (Tex. Civ. App.—San Antonio 1927, no writ) (preceding *Borderland Hardware* and stating "duress may arise from threats of prosecution for an offense of which the party threatened is actually guilty.").

the party threatened is actually guilty."); *Pfeuffer v. Haas*, 55 S.W.2d 111, 114 (Tex. Civ. App.—Austin 1932, writ dism'd) (following "modern doctrine"); *see also Walker v. Texas*, No. 7:17-CV-00168-O-BP, 2018 WL 1448799, at \*9 (N.D. Tex. Mar. 7, 2018) (applying Texas law), *report and recommendation adopted sub nom. Walker v. Stephens*, No. 7:17-CV-00168-O-BP, 2018 WL 1427201 (N.D. Tex. Mar. 22, 2018); *F.D.I.C. v. White*, 76 F. Supp. 2d 736, 739 (N.D. Tex. 1999) (same).[5] We have previously agreed with the majority position albeit in dicta. *See Eggleston v. Humble Pipe Line Co.*, 482 S.W.2d 909, 916 (Tex. Civ. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.).[6]

---

[5] Several courts in Texas have quoted the following language from the Alabama Supreme Court crystalizing the reasoning behind the majority rule:

> It was never contemplated in the law that either the actual or threatened use or misuse of criminal process, legal or illegal, should be resorted to for the purpose of compelling the payment of a mere debt, although it may be justly owing and due, or to coerce the making of contracts or agreements from which advantage is to be derived by the party employing such threats. Ample civil remedies are afforded in the law to enforce the payment of debts and the performance of contracts, but the criminal law and the machinery for its enforcement have a wholly different purpose, and cannot be employed to interfere with that wise and just policy of the law that all contracts and agreements shall be founded upon the exercise of the free will of the parties, which is the real essence of all contracts.

*Hartford Fire Ins. Co. v. Kirkpatrick*, 111 Ala. 456, 20 So. 651, 654 (1896) (quoted in *White*, 76 F. Supp. 2d at 739; *Greene*, 424 S.W.2d at 9; *Houston Ice & Brewing Co. v. Harlan*, 228 S.W. 1090, 1091 (Tex. Comm'n App. 1921, judgm't adopted); *Gray*, 37 Tex. Civ. App. at 560-61, 84 S.W. at 1107).

[6] This is also the position taken in the Restatement. Restatement (Second) of Contracts §§ 175(1) ("If a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim."), 176(1)(b) ("A threat is improper if . . . what is threatened is a criminal prosecution . . . ."), cmt. c ("[I]f a threat is made, the fact that the one who makes it honestly believes that the recipient is guilty is not material. The threat involves a misuse, for personal gain, of power given for other legitimate ends. . . . The guilt or innocence of the person whose prosecution is threatened is immaterial in determining whether the threat is improper . . . ."); *see also Bolton*, 185 S.W.3d at 877-79 & n.7 (discussing section 175 and other duress-related sections in various Restatements).

The Texas Supreme Court has not addressed the specific issue raised here. In *Landa v. Obert*, 78 Tex. 33 (1890), the court considered a lawsuit brought to recover funds obtained due to duress from a threat of criminal prosecution. As other courts have noted, however, *Landa* is

We will follow the majority rule in this case and consider whether Weinberg presented evidence that Baharav threatened him with imminent criminal prosecution such as was intended to and did interfere with Weinberg's exercise of free will and judgment, but without requiring proof that Weinberg was innocent of the criminal allegations.

**Did Weinberg present evidence raising a fact issue on each elements of the affirmative defense of duress?**

In his declaration, Weinberg states that he signed the agreement at a meeting of family investors after Baharav threatened to have him arrested and charged with crimes if he did not sign. Weinberg also provided lengthy detail about the business relationship between himself, Baharav, and Birger, and the problems that beset that relationship, which provided context for understanding the nature of the threats Baharav allegedly made. Weinberg stated that such charges as Baharav threatened "would have effectively ruined and terminated my business, deprived me of future business and profits, and destroyed my family, especially my father, who is a Rabbi." Weinberg insists that he signed under "duress and coercion" and had subsequently "attempted to accommodate [Baharav] out of fear that he would make these criminal accusations." Weinberg indicated that he felt that he had no other choice than to sign, even though he did not agree that the agreement was factually accurate or a good idea.

Language from the agreement itself further supports Weinberg's assertions, particularly wherein it recites that the "creditors . . . out of the goodwill in their hearts

---

distinguishable from the present situation because it involved a duress cause of action rather than an affirmative defense, the right of recovery was predicated on the alleged falsity of the charges made, and there was a contract involved under which the plaintiff was to be entitled to reimbursement if the charges were demonstrated to be false. *See Harlan*, 228 S.W. at 1091; *Greene*, 424 S.W.2d at 10.

9

. . . created this agreement . . . rather than pursue both civil and criminal actions against the debtor at this time" and that they "still maintain their rights to pursue any and all legal actions available under the law to retrieve their money if the debtor doesn't abide by any portion of this agreement." Additionally, in one of Weinberg's emails that were included in the summary judgment evidence, he denied being a thief, which suggests someone accused him of being a thief at some point.

This evidence, viewed in the light most favorable to Weinberg, is sufficient to raise a material issue of fact on Weinberg's affirmative defense that he was threatened with imminent criminal prosecution if he did not sign the agreement and that such threats were intended to and did interfere with his exercise of free will and judgment.[7] *See Bolton*, 185 S.W.3d at 878-79; *Man Indus.*, 407 S.W.3d at 367. The alleged improper or unlawful conduct here was the reference to the criminal justice processes to pressure Weinberg to sign an agreement that he otherwise professes he did not voluntarily sign. *See Bolton*, 185 S.W.3d at 878-79 (noting that "[a] common element of duress in all its forms . . . is improper or unlawful conduct or threat of improper or unlawful conduct"); *White*, 76 F. Supp. 2d at 739 (describing the use of threats of criminal prosecution to pressure someone into signing an agreement as wrongful conduct); *Greene*, 424 S.W.2d at 9 (same); *Harlan*, 228 S.W. 1090, 1091 (same); *Gray*, 37 Tex. Civ. App. at 560-61, 84 S.W. at 1107 (same).

### *Conclusion*

Because Weinberg presented evidence sufficient to raise a material issue of fact on each of the elements of his affirmative defense, the trial court erred in granting summary judgment favoring appellees. *Brownlee*, 665 S.W.2d at 112. Accordingly, we sustain Weinberg's first issue. Having sustained his first issue, we

---

[7] Appellees did not present any evidence suggesting that no such threat was made.

10

need not address his remaining three issues.

We reverse the trial court's judgment and remand for further proceedings in accordance with this opinion.


/s/     Martha Hill Jamison
        Justice


Panel consists of Justices Boyce, Jamison, and Brown.

11